<pre>
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3   EDWARD JOSEPH MCNATT,            :
                Plaintiff            :
 4                                    :
         v.                          :      No. CA 05-124E
 5                                    :
     JUDGE OLIVER J. LOBAUGH         :
 6   et al.,                                     :
                Defendant            :
 7

 8

 9          Hearing in the above-captioned matter held on

10   Thursday, June 29, 2006, commencing at 9:57 a.m., before The

11   Honorable Susan Paradise Baxter, at the United States

12   Courthouse, Courtroom C, 617 State Street, Erie,

13   Pennsylvania 16501.

14

15

     For the Plaintiff:
16
         Thomas W. Patton, Esquire
17       Federal Public Defender's Office
         1111 Renaissance Centre
18       1001 State Street
         Erie, Pennsylvania 16501
19

20   For the Defendant:

21       Brenda Servidio, Esquire
         Venango County District Attorney's Office
22       1168 Liberty Street
         Franklin, Pennsylvania 16323
23

24

25              Reported by Heather E. Nass
             Ferguson & Holdnack Reporting, Inc.
</pre>

1              JUDGE BAXTER:  This is the case of Edward Joseph McNatt
2    versus Judge Oliver J. Lobaugh, et al., Civil Action No. 05-124
3    Erie.  I asked that we have an evidentiary hearing based upon a
4    request by Mr. McNatt when he was in front of me in a telephonic
5    hearing on his motion for a hearing.  So, he basically won that
6    argument and at that point Mr. Patton requested -- looked at the
7    material and requested appointment and which I did that.
8              I have spoken to both counsel prior to the hearing to
9    get a framework of how we would proceed.  It's my understanding
10   that there will not be evidence taken by way of testimony today,
11   but we will, in fact, be arguing the case.  So, I will turn to
12   Mr. Patton since you are the Petitioner.
13             MR. PATTON:  Thank you, Your Honor.
14             JUDGE BAXTER:  Is there a problem, do you need a
15   minute?
16             MR. PATTON:  No, that's fine.  I would like to try and
17   lay out for the record, so that it's clear for everyone, and to
18   make sure that everyone is in agreement as to procedurally what
19   has happened in the case.
20             Mr. McNatt was convicted in Venango County under two
21   separate docket numbers.  One being 182 of 1998 and one being
22   183 of 1998.  In the 182 case he was charged with forgery, theft
23   by deception, I believe it's bad checks and conspiracy.  That
24   charge was based on passing a forged check to an establishment
25   in Venango County and it was charged to have occurred on July

1    14th of 1997.

2              In the second information at 183 of '98, Mr. McNatt was

3    charged with committing an offense on or about Wednesday, the

4    6th day of August of 1997.  Four counts of passing a bad check

5    while those checks alleged to have been passed at a particular

6    business in Venango County, and that business was Henry's

7    Riverside Market.  He was then charged with theft by deception

8    for unlawfully and intentionally obtaining or withholding the

9    property of another by deception, in that he created or

10   reinforced a false impression as to law, value, intention or

11   other state of mind, to wit, he did the acts described in the

12   bad checks charges.  So the theft by deception --

13             JUDGE BAXTER:  What's that charge, that's a bad check

14   charge?

15             MR. PATTON:  No, that's the theft by deception charge,

16   Your Honor.  The conduct constituting the offense was basically

17   obtaining property by creating a false impression.

18             JUDGE BAXTER:  Okay.

19             MR. PATTON:  By passing the actual bad checks, it's the

20   bad checks that created the false impression.

21             JUDGE BAXTER:  I'll be turning to the DA many times on

22   this because I don't know Pennsylvania criminal law.

23             MR. PATTON:  Basically, passing the bad checks that

24   were not -- that actually did not belong to Mr. McNatt.  He

25   signed someone else's name to them, passed them.  And so, in

1   fact, the theft by deception charge incorporated into it the acts

2   that constituted the first four counts of passing bad checks.

3            JUDGE BAXTER:  Okay.  And that was four counts.

4            MR. PATTON:  There were four counts of bad checks.

5            JUDGE BAXTER:  Okay.

6            MR. PATTON:  Which made the theft by deception count

7   five.  And then there was also a count of receiving stolen

8   property, which was again based on the same conduct, that is,

9   receiving property from Henry's Riverside Market by passing the

10  bad checks.

11           Ultimately, Mr. McNatt pled guilty to the first count

12   of the Case No. 182 of 1998 which was a forgery charge.  Which

13   was charged, again, as occurring on the 14th day of July of

14   1997, passing a forged check at Peddler's Village.

15           He then pled guilty to the theft by deception charge in

16   Case No. 183 of 1998.  Ultimately, Mr. McNatt was -- well, at

17   the change of plea, when the factual basis was -- well, when the

18   charges were explained to Mr. McNatt, it was explained to him --

19           JUDGE BAXTER:  This is the complete colloquy.

20           MR. PATTON:  That's correct, Your Honor.

21           JUDGE BAXTER:  Which was when?

22           MR. PATTON:  September 15th of 1998.  He was told --

23   the Court informed him as follows:  "Count 5 at CR-183, theft by

24   deception, alleged that you did on August 6th, 1997, at

25   Riverside, obtain property, in this case, probably money or

1   groceries, by deception.  And you created a false impression as

2   to your authority to write the checks and as to whether or not

3   the checks were good and honored by the drawer to approve them.

4   They would have to prove that to get you for theft by deception;

5   do you understand that."  And Mr. McNatt answered, "Yes, Your

6   Honor."  And the Court then asked, "And are you confessing to

7   those offenses substantially as they charged?"  Mr. McNatt

8   answered, "Yes."

9          The Judge then asked defense counsel to provide a

10   factual basis for the plea.  The defense counsel said, "Taking

11   you back to the time period between, as the Court has mentioned,

12   July 14th of 1997 and August 6th, 1997.  Did you, in fact, write

13   checks to yourself under your true name and sign the back of

14   those checks under a false name?"  Mr. McNatt said, "I signed

15   the front of the checks with the false name."  And the defense

16   counsel asked, "So you did use a name other than your own."

17   Mr. McNatt answered, "Yes."

18          And the defense counsel said, "Passing any of these

19   checks to a certain establishment."  Mr. McNatt said, "Yes."

20   The defense counsel asked, "Riverside."  And Mr. McNatt

21   responds -- and it says Beddler's Village in the transcript, I

22   believe it's actually Peddler's Village.  And the defense

23   counsel asked, "Did you receive property?"  And Mr. McNatt said,

24   "Yes."  The defense counsel asked, "What type of property?"  And

25   Mr. McNatt says, "Cash and merchandise."  And that was the

1    factual basis that was provided for both counts, actually.

2          JUDGE BAXTER:  Is this a different attorney from the

3    PCRA attorney?

4          MR. PATTON:  Yes.

5          JUDGE BAXTER:  And who is this attorney?

6          MR. PATTON:  This is Blair H. Hindman, H-I-N-D-M-A-N.

7          JUDGE BAXTER:  Thank you.

8          MR. PATTON:  Mr. McNatt was, obviously, then sentenced

9    following his plea.  He was sentenced to Count No. 183 of 1988 to

10   a term of imprisonment of 16 to 60 months.

11         JUDGE BAXTER:  Let's go back.  So he pled to two

12   counts, one at each information number in the case number.

13         MR. PATTON:  That is correct.  He pled to the forgery

14   counts in the 182 of '98 which involved a check at Peddler's

15   Village.

16         JUDGE BAXTER:  That was Count 1, was there more than

17   one forgery count?  So Count 1 of 182 and Count 5 of 183.

18         MR. PATTON:  Correct.  For the 183 count, the theft by

19   deception, he was sentenced to 16 months to 60 months with the

20   effective date of that sentence being October 20th of 1998.

21   Meaning, that is the date this sentence began running.

22         In the second -- or excuse me, the forgery count in 182

23   of '98, Mr. McNatt was sentenced to 16 months to 84 months which

24   was made consecutive to the sentence he received on the theft by

25   deception.  So, he received a total of 32 months to 144-month

1    sentence.

2                JUDGE BAXTER:  And the max date of that?

3                MR. PATTON:  Is October 20th of 2010.

4                JUDGE BAXTER:  Okay.

5                MR. PATTON:  Prior to the time that Mr. McNatt had pled

6    guilty and was sentenced in Venango County he had also had some

7    related charges in Lackawanna County.  In Lackawanna County

8    Mr. McNatt had been charged with forgery for writing a bad check

9    and theft by unlawful taking for stealing a checkbook.

10               Now, the checkbook he was charged with stealing in

11   Lackawanna County was the source of the checks that Mr. McNatt

12   passed in Venango that served as the basis for the Venango

13   County charges.

14               However, the charges in Lackawanna County were for

15   separate checks than the ones that were involved in Venango

16   County.  And, ultimately, in Lackawanna County Mr. McNatt pled

17   guilty to one count of forgery for forging one of the checks

18   that came from the checkbook that was stolen.  But that check is

19   different than any of the checks that formed the basis of the

20   Venango County charges.

21               Mr. McNatt had an outstanding arrest warrant in

22   Lackawanna County in an unrelated retail theft charge.  And I

23   believe what the records would show is that on July 20th of 1997

24   Mr. McNatt was actually arrested on that outstanding warrant,

25   was placed in the Lackawanna County jail on that date, July 20th

1    of 1997, and remained in the Lackawanna -- he actually has never

2    been free since that time.  He has been incarcerated either

3    originally serving the sentence that he received out at the

4    Lackawanna County jail and then switching over to the sentences

5    in Venango County.  He has never been free of custody since July

6    20th of 1997.

7              JUDGE BAXTER:  All right.  How long was he in

8    Lackawanna?

9              MR. PATTON:  He was in the jail until December 2nd of

10   1997, before he got turned over to the Department of Corrections

11   and then he went into their custody.

12             We have contacted the Lackawanna County prison and have

13   a letter from them giving us the dates that he was incarcerated

14   in their facility.  And they state that he was there from

15   February 9th of 1997 through February 19th of 1997 then came

16   back in on July 20th of 1997 and stayed there until December 2nd

17   of 1997.  And the release from the Lackawanna County jail on

18   December 2nd of 1997 would have been his release from the

19   Lackawanna County jail to the Pennsylvania Department of

20   Corrections to serve the sentence he received in Lackawanna

21   County.

22             JUDGE BAXTER:  Okay.

23             MR. PATTON:  No direct appeal was taken from

24   Mr. McNatt's convictions and sentences in Venango County.

25             JUDGE BAXTER:  Did he move to withdraw his guilty plea

1    there at any time?  Was that a guilty plea?

2            MR. PATTON:  He did not and has not at any time filed a

3    motion to withdraw the guilty plea.  He did file a motion asking

4    for permission to file post-trial motions and a direct appeal

5    nunc pro tunc.

6            JUDGE BAXTER:  In Lackawanna?

7            MR. PATTON:  No, in Venango County.

8            JUDGE BAXTER:  Did he plead to those charges there?

9            MR. PATTON:  Yes.

10           JUDGE BAXTER:  He pled to those.

11           MR. PATTON:  Correct.

12           JUDGE BAXTER:  And you are saying he had no direct

13   appeal on those charges.

14           MR. PATTON:  He had no direct appeal on those charges,

15   but he also did not have any direct appeal on the Venango County

16   charges.

17           JUDGE BAXTER:  All right.  And he was sentenced in

18   Lackawanna on December 2nd.

19           MR. PATTON:  No, he was sentenced, actually, on

20   November 24th of 1997.

21           JUDGE BAXTER:  And what was that sentence?

22           MR. PATTON:  He got sentenced in two cases in

23   Lackawanna County, Your Honor.  On the forgery count he got 17 to

24   36 months.  He also had an unrelated retail theft that he

25   received a sentence of nine to 36 months on.

1          JUDGE BAXTER:  Were those -- I think they're
2    consecutive if they're not --
3          MR. PATTON:  They were ordered consecutive.
4          JUDGE BAXTER:  Okay.
5          MR. PATTON:  Now, if you take the Lackawanna County
6    sentences -- but part of the sentencing in Venango County was a
7    request by defense counsel to make the Venango County sentence
8    concurrent with the Lackawanna County sentence.  In effect what
9    Judge Lobaugh did by making the effective date of the Venango
10   County sentences October 20th of 1998, made them partially
11   concurrent.  Judge Lobaugh could have ordered that the Venango
12   County sentences be completely consecutive to the Lackawanna
13   County sentence, but he did not do that.
14         JUDGE BAXTER:  Okay.
15         MR. PATTON:  Now, he also did not make them completely
16   concurrent because he made the effective date of the Venango
17   County October 20th of 1998.
18         JUDGE BAXTER:  But the maximum has -- I mean the
19   maximum of the two sentences in Lackawanna County would have been
20   seven years; is that correct, six years?
21         MR. PATTON:  Six years.
22         JUDGE BAXTER:  And that would have expired several
23   years ago.
24         MR. PATTON:  Correct.
25         JUDGE BAXTER:  Okay.  When was he charged in Venango

1    County?

2            MR. PATTON:  The charges were filed -- I have to find

3    the Criminal Complaint, Your Honor.

4            JUDGE BAXTER:  By the way, Mr. Patton, if you want to

5    come up to the podium here.  I have the County's information, but

6    they don't have the date on them.

7            MR. PATTON:  I have the Criminal Complaints somewhere,

8    Your Honor.

9            JUDGE BAXTER:  These are what I have and there's no

10   date on them.

11           MS. SERVIDIO:  This was filed on September 16th of

12   1997.

13           JUDGE BAXTER:  September 16th.  So, was the Judge in

14   Lackawanna County aware of the charges in Venango County?

15   Mr. McNatt says yes.

16           MR. PATTON:  I don't know that.

17           JUDGE BAXTER:  It's not reflected in the transcript of

18   his sentencing or --

19           MR. PATTON:  No, I don't know from reviewing any of the

20   documents whether or not the Judge in Lackawanna County knew of

21   the Venango County charges.

22           JUDGE BAXTER:  All right.  He wasn't transferred at any

23   time while he was in Lackawanna jail to Venango County.

24           MR. PATTON:  No, that didn't occur until he was in the

25   Department of Corrections.  Actually, I think the transfer orders

1    are actually attached to the order of the County and I believe

2    those are all directed to the Department of Corrections.

3              JUDGE BAXTER:  Okay.  All right, go ahead.

4              MR. PATTON:  So, as far as the Lackawanna County stuff

5    is concerned, none of these -- the habeas petition that we're on

6    today is not challenging any of the convictions out of Lackawanna

7    County -- or sentences out of Lackawanna County.  But I just

8    wanted to give that background, so the Court has it and also

9    because the date of his arrest in Lackawanna County on the

10   outstanding warrant, that date being July 20th of 1998, plays an

11   important role in the grounds for relief raised in the habeas

12   petition challenging the Venango County charges.

13             JUDGE BAXTER:  I understand.

14             MR. PATTON:  So focusing back on the Venango County

15   charges, there was not a direct appeal filed, although, it is our

16   position that one was requested to be filed, but there's no

17   question that one was not filed.  Mr. McNatt, himself, filed a

18   pro se motion to be allowed to file postsentencing motions and a

19   direct appeal, but nunc pro tunc, but that was denied.

20             JUDGE BAXTER:  How long after his sentencing did he do

21   that?

22             MR. PATTON:  I believe it was in February that he filed

23   the motion to be allowed to file nunc pro tunc.

24             JUDGE BAXTER:  And that was how long after his

25   sentencing?

1          MR. PATTON:  The sentencing was October 20th of 1998.

2          JUDGE BAXTER:  So in February of '99 he filed them.

3          MR. PATTON:  February 17th of 1999 it was filed.  And

4    that motion was attached to Venango County's Answers to the

5    petition at Tab 15 and it's file stamped February 17th of 1999.

6    That was denied on March 12th, 1999 by Judge Lobaugh.  Mr. McNatt

7    did file a PCRA Petition in Venango County.  He had an attorney

8    appointed to represent him, a William Cisek, that's C-I-S-E-K.

9          There was a period of time where Mr. McNatt continued

10    to file some pro se filings with Venango County because he was

11    frustrated with Mr. Cisek's failure to file documents.  Judge

12    Lobaugh --

13          JUDGE BAXTER:  This is the PCRA he filed in '04.

14          MR. PATTON:  Correct.

15          JUDGE BAXTER:  So he filed nothing on his own after his

16    attempt in 1998 to file nunc pro tunc postsentencing motions and

17    appeals.

18          MR. PATTON:  No, he did not file anything himself in

19    Venango County until the PCRA Petition.

20          JUDGE BAXTER:  Until the 2004 petition.  Okay.  And he

21    was frustrated with Mr. Cisek's failure to contact him.

22          MR. PATTON:  Correct.  Judge Lobaugh at one point filed

23    an order saying that he would not allow Mr. McNatt hybrid

24    representation and therefore, basically, denied any pro se

25    filings Mr. McNatt had filed without reaching their merits,

1    finding that he, he being Mr. McNatt, was represented by

2    Mr. Cisek.  And therefore, he could file anything he wanted file

3    through Mr. Cisek.

4            There was a videoconference held in response to

5    Mr. McNatt's request that Mr. Cisek be removed from the case.

6    Mr. McNatt ultimately agreed to allow Mr. Cisek to continue to

7    represent him.  There was then a second videoconference held,

8    again it was going to address the issue of Mr. McNatt's

9    unhappiness with Mr. Cisek.  But at that -- or during that

10   videoconference, or immediately prior to it, Mr. Cisek filed a

11   new merit letter with the Court saying that he did not believe

12   that there were meritorious issues raised in the PCRA Petition.

13           Judge Lobaugh eventually entered an order indicating

14   his intention to dismiss the PCRA Petition without having a

15   hearing.  Mr. McNatt filed a response to that, but on January

16   31st of 2006 Judge Lobaugh dismissed the PCRA Petition and

17   informed Mr. McNatt of his rights to appeal that denial.

18   Mr. McNatt then did file a notice of appeal with the Superior

19   Court and that appeal is currently pending.  Mr. McNatt's brief

20   has been filed with the Superior Court.  The Commonwealth's

21   burden is due on July 10th of this year.

22           JUDGE BAXTER:  Let's talk about what claims were made

23   in the PCRA Petition.

24           MR. PATTON:  In the PCRA Petition Judge Lobaugh

25   addressed the following issues.  And I have a copy of that order

1    because I don't think it's --

2              JUDGE BAXTER:  I don't think it's in the file.

3              MR. PATTON:  No, I don't believe that it is.

4              JUDGE BAXTER:  Because I believe they responded with

5    the materials before that came out.

6              MR. PATTON:  Yes.  I have a copy of the January 31st,

7    2006 order.

8              JUDGE BAXTER:  I'm going to place this into the record

9    without any objection, Ms. Servidio.

10             MS. SERVIDIO:  Certainly, Your Honor.

11             MR. PATTON:  Judge, we're just comparing.

12             JUDGE BAXTER:  Take your time, I just want to look this

13   over.  What I was interested in was whether or not the Court had

14   addressed the issue about his being incarcerated in that.

15             MR. PATTON:  Correct, he did it in the, basically, in

16   the sense of it being in and of itself a substantive --

17             JUDGE BAXTER:  Not a part of ineffective assistance.

18   Are you saying it was separate or part of the ineffective

19   assistance?  It was right after he discussed ineffective

20   assistance.

21             MR. PATTON:  Right, but the ineffective assistance

22   that's discussed in here -- or the ineffective assistance claim

23   is based on --

24             JUDGE BAXTER:  On the guilty plea or the sentencing.

25             MR. PATTON:  Yes, the sentence, that counsel hadn't

1    adequately explained the sentencing guidelines to him.

2              JUDGE BAXTER:  Well, on Page 15 of the Ruling the Judge

3    said, "His final argument was not included in the Petition and it

4    has been raised to appointed counsel and addressed in the new

5    merit letter."

6              MR. PATTON:  Correct.

7              JUDGE BAXTER:  And then it's the factual issue of

8    whether or not he was incarcerated at the time of Count 183.

9              MR. PATTON:  That's correct.  It appears to me that the

10   way it was addressed was that it was being in and of itself a

11   substantive basis for granting the PCRA.  Just the argument that

12   I'm innocent of these charges and because I'm innocent, based

13   solely on that fact, you can and should vacate the sentence.

14             JUDGE BAXTER:  And I think Judge Lobaugh agreed that he

15   should address it as that.

16             MR. PATTON:  Absolutely.

17             JUDGE BAXTER:  Okay.

18             MR. PATTON:  That, I don't dispute.  I mean, I disagree

19   with the way Judge Lobaugh --

20             JUDGE BAXTER:  I'm not surprised.

21             MR. PATTON:  -- addressed it, but it was certainly

22   raised.  And the only reason I talk about and bring up the fact

23   that it appears to have been treated as a substantive basis to

24   provide relief is that, as you know in Federal Court, while an

25   argument of actual innocence can be presented in a federal habeas

1    petition as a way of trying to get around procedural default, in

2    and of itself, a claim of actual innocence is not a substantive

3    basis for relief.

4              JUDGE BAXTER:  That's right.

5              MR. PATTON:  But it appears to me --

6              JUDGE BAXTER:  Which has always been an interesting

7    thing for me.  This does not have anything to do with the

8    Constitution, sideline, go ahead.

9              MR. PATTON:  It's a strange -- I mean, it is a strange

10   fact.

11             JUDGE BAXTER:  Was it addressed by the district

12   attorney in response to the PCRA, do you know?

13             MR. PATTON:  There was no response ever filed because

14   there was --

15             JUDGE BAXTER:  Because there was a no merit letter.

16             MR. PATTON:  Because of the no merit letter.

17             JUDGE BAXTER:  Okay.  Go ahead.

18             MR. PATTON:  But the reason -- again, the reason why I

19   highlight the manner in which it was considered by Judge Lobaugh

20   is that, you know, it wasn't considered -- I would submit, "As I

21   received ineffective assistance of counsel by having my counsel

22   give me advice that led me to plead guilty to an offense I was

23   not guilty of."

24             It was presented to the State Court as in and of itself

25    being a substantive ground for the granting of -- or the

                                                                    17

1    vacating of the conviction, being 183 of '98, the theft by

2    deception.

3            JUDGE BAXTER:  Mr. McNatt figured this out when he was

4    looking at transcripts in his cell, is that how --

5            MR. PATTON:  Looking at document sheets.

6            JUDGE BAXTER:  Because, clearly, he never mentioned it

7    to his attorney and he clearly never brought it up before, at

8    least on the record.

9            MR. PATTON:  There is nothing on the record during the

10   change of plea that says I was incarcerated on August 6th of '98.

11           JUDGE BAXTER:  What I'm getting at is, was there ever

12   conversation that we know between him and his attorney that said,

13   yes, I get it that you were incarcerated, but that doesn't matter

14   and he went ahead and pled.  There's nothing -- we don't know if

15   they didn't talk about that on the record during the plea

16   colloquy.

17           MR. PATTON:  No.  Now, during the sentencing hearing

18   his --

19           JUDGE BAXTER:  Did this just come out of the blue to

20   Judge Lobaugh in the PCRA?

21           MR. PATTON:  You're talking about at the time of the

22   change of plea, is there anything on the record regarding an

23   exchange.

24           JUDGE BAXTER:  Right, at that hearing, at the

25   sentencing.  I mean, did Judge Lobaugh have that issue in front

1    of him prior to the PCRA, that you know of, from the record.  I

2    don't want to get into a, yes, we did talk about it from

3    Mr. McNatt because that's a he said without the other person

4    there to tell me; you understand that.

5              MR. PATTON:  Right, correct.  At the change of plea,

6    there is nothing in the change of plea where there's a discussion

7    about, I was incarcerated on August 6th of 1997.

8              Now, at the sentencing hearing it was talked about, in

9     the PCRA proceeding and the videoconference the issue was talked

10    about.  But as far as at the time of the plea, no.  At the time

11    of sentencing his attorney -- when his attorney is making an

12    argument regarding the appropriate sentence, the attorney does

13    state that, "I want to bring to the Court's attention, those

14    charges happened in a very short period of time.  He's sentenced

15    to a two-month to a six-year maximum," he's referring to the

16    Lackawanna County sentence there.  "And has been incarcerated in

17    the State penitentiary since, I believe, mid July of last year,

18    1997."

19            JUDGE BAXTER:  And that didn't send up red flags to his

20    attorney, we don't know.

21            MR. PATTON:  But at the sentencing Mr. McNatt's

22    attorney is saying --

23            JUDGE BAXTER:  Is telling the history.

24            MR. PATTON:  Right, and is telling Judge Lobaugh, my

25    client has been incarcerated since mid July of last year.  The

1    sentencing is on October 29th of 1998. And so he's been

2    incarcerated since mid July of last year, 1997. So there is

3    something at the sentencing that it should have caused some

4    pause, but it was never brought to Judge Lobaugh's attention on

5    the record in the sense of saying, these offenses are charged

6    with occurring on or about August 6th of 1997, I was incarcerated

7    on that date.

8           JUDGE BAXTER: Do we have any evidence that the reason

9    the Commonwealth went with a plea to Count 5 and dropped Counts 1

10   through 4 the bad checks and Count 6 on receiving stolen

11   property had anything to do with the elements of those crimes

12   requiring a date certain? And that may be proof of theft by

13   deception, which Judge Lobaugh talks about in the PCRA, did not

14   have that requirement, there's nothing having to do with any

15   theft?

16          MR. PATTON: The only thing there is in the record,

17   Your Honor, regarding the plea is there is the written --

18          JUDGE BAXTER: Not written to this party.

19          MR. PATTON: All there is is the actual plea letter,

20   the plea agreement that says Mr. McNatt's going to be pleading to

21   Count 1 of 182 of '98 case and Count 5 of the 183 of the '98.

22   But there is nothing in the record that discusses what the

23   reasoning behind those negotiations were and why it was those

24   counts that were selected for the plea rather than any of the

25   other ones. The count implied --

1          JUDGE BAXTER:  I'm not going to interrupt you anymore,

2    go ahead.

3          MR. PATTON:  The count that he pled guilty on the 182

4    Case, the forgery, was a felony offense.  And the offense that he

5    pled --

6          JUDGE BAXTER:  Bad checks are misdemeanors?

7          MR. PATTON:  Yes, and the theft by deception was a

8    Misdemeanor 1.  And it would appear, I think, the bad checks was

9    an M2.  It looks like the theft by deception was the most serious

10   count of the second Complaint.

11         JUDGE BAXTER:  Of the second Complaint, okay.  So you

12   came forward to his filing of habeas.

13         MR. PATTON:  Correct.

14         JUDGE BAXTER:  He's frustrated that nothing's happening

15   in Venango County on his PCRA.

16         MR. PATTON:  Right.  And Mr. McNatt had filed some

17   stuff in various -- he had filed a petition with the State

18   Supreme Court trying to get some relief from them, which was

19   denied.  He filed some pleadings with the Superior Court prior to

20   his PCRA being ruled on, which were ultimately dismissed with no

21   relief.

22         He filed a habeas corpus petition in Venango County, a

23   State habeas corpus petition.  That was one that Judge Lobaugh

24   denied saying, you have PCRA Petition filed, you're represented

25   by counsel.  Whatever issues you're raising in your habeas

1    petition can be argued as part of your --

2              JUDGE BAXTER:  State habeas petitions are a mystery.

3              MR. PATTON:  Yes.  No one can decide whether there

4    really is a habeas corpus in Pennsylvania anymore or not.  But

5    Judge Lobaugh's response to it was if you were raising issues

6    here in a State habeas petition, if you want to raise those in

7    front of me they can be presented to me in the PCRA Petition.

8              JUDGE BAXTER:  All right.  So in his habeas petition

9    his claims are -- and let's talk about -- delineate what they are

10   and then let's discuss which ones will be a problem with

11   exhaustion.

12             MR. PATTON:  Now, the habeas petition which was

13   originally filed as a Section 1993 civil rights complaint, which

14   Your Honor ordered to be converted into a habeas.

15             JUDGE BAXTER:  Because of it's relief; is that correct,

16   because of his relief?

17             MR. PATTON:  I'm assuming that's why your order was

18   entered.  That was done prior to me being appointed in the case

19   and the order simply says that the clerks are directed to change

20   it and we have treated it as a habeas petition.

21             JUDGE BAXTER:  Does he have a problem with that?

22             MR. PATTON:  No.  What is now being classified as the

23   habeas petition argues a number of things.  It argues double

24   jeopardy based on an argument Mr. McNatt was -- the offenses he

25   was convicted of in Lackawanna County were the same offenses as

22

1  the offenses he was convicted of in Venango County and,

2  therefore, there was a double-jeopardy violation.  We will not be

3  pursuing that claim.

4          JUDGE BAXTER:  Pursuing that claim.

5          MR. PATTON:  The paperwork in Venango County clearly

6  establishes that the checks involved in the separate cases are

7  separate checks and that there is no double jeopardy.

8          There is also an argument of denial of due process,

9   denial of access to the courts, malicious prosecution, illegal

10   detention and an unlawfully induced guilty plea.

11          The denial of access to the courts and the illegal

12   detention, I believe it's fair to say that the denial of access

13   to the courts was the frustration that things were not being

14   ruled upon in Venango County.  And therefore, Mr. McNatt was

15   claiming that he was being effectively denied access to the

16   courts because they had not ruled on any of the various -- or at

17   least not ruled on the merits of the various filings he had

18   filed in Venango County.

19          JUDGE BAXTER:  His illegal detention argument stems

20  from the fact that he says that he was not there at that County;

21  is that correct?

22          MR. PATTON:  Correct, and that he is not -- that he

23  should be getting relief from that conviction, the theft by

24  deception.

25          JUDGE BAXTER:  And that was the basis of his due

23

1    process claim as well.

2            MR. PATTON:  Correct.  And that, therefore, he has

3    served the maximum sentence on the forgery count that he pled

4    guilty to on the 182 of '98 case.  And hence, his claim, he's

5    being illegally detained because he's saying he's detained past

6    his maximum.

7            JUDGE BAXTER:  Now, his unlawfully induced guilty plea

8    claim was not brought as an ineffective assistance or can it be

9    read both ways?

10           MR. PATTON:  Your Honor, I would submit that a liberal

11   reading of his petition, since it was a pro se petition under the

12   United States versus Garth, 188F of '99, it's a Third Circuit '99

13   case.  It just stands for the general proposition that the pro se

14   petition should be liberally construed to do substantial justice

15   and that pro se pleadings should be subject to less stringent

16   standards of specificity.  And their complaint should be

17   construed liberally.  I think given --

18           JUDGE BAXTER:  Yes, and then the Circuit does something

19   like the exhaustion has to be exact.  It's a tough call, but go

20   ahead.

21           MR. PATTON:  Well, there's not much doubt that the

22   procedural default and exhaustion requirements of either

23   intentionally or unintentionally have developed to the point

24   where they're --

25           JUDGE BAXTER:  They're case specific.

1          MR. PATTON:  They're case specific.  They're going to

2     make it difficult for a pro se petitioner to figure out exactly

3     what he or she is supposed to do.

4          JUDGE BAXTER:  Because it's difficult for the --

5          MR. PATTON:  The appellate courts can't agree on what

6     has to be done properly.

7          JUDGE BAXTER:  All right.

8          MR. PATTON:  But be that as it may, I think if you read

9     Mr. McNatt's petition liberally, the claim of illegal detention

10    and the unlawfully induced guilty plea fairly presents the

11    argument that he received ineffective assistance of counsel when

12    pleading guilty and making a decision to plead guilty.  With the

13    argument being based on the fact that it was ineffective for

14    counsel to instruct him to plead guilty to an offense that was

15    alleged to have occurred while he was incarcerated.

16          And I think that when you read the part of his

17    complaint that sets out the statement of claim, which is 15

18    separate paragraphs that he's typed out basically laying out the

19    facts he believes support the various claims he's made, that

20    those facts set forth an ineffective assistance of counsel

21    claim.

22          JUDGE BAXTER:  Also, I will look at -- Ms. Servidio, I

23    will look at the rebuttal to that petition filed to your

24    response.  And I take those arguments to be part of this claim

25    and I do that under Garth and Haines v. Turner (phonetic).  Those

1    cases which tell me I'm supposed to liberally construe the

2    claims.  Because often it's there that they are -- their

3    arguments were good, their claims are more understandable.  And

4    part of that is the forms that we give them.  The forms that we

5    give them give them like a line to tell me what the claims are

6    and that's probably why.

7              MR. PATTON:  And, you know, Your Honor, also in the

8    habeas petition, you know, they're asked to name the persons

9    involved, not only does he list the judge, Judge Lobaugh, the

10   district attorney's office, the clerk of courts, but the public

11   defender's office, which he was represented through the public

12   defender's office, Mr. Hindman, at the time of this plea and

13   sentencing.  I think when you combine the factual basis that he

14   lays out, says that he's challenging his illegal detention, lays

15   out the factual basis and includes the DA's office, the office

16   that represented him at the plea and sentencing.  That can be

17   fairly read to read that he received ineffective assistance of

18   counsel with regard to the advice that he plead guilty to that

19   offense.

20             And we would intend to try to move forward -- well,

21    let's me say that more precisely.  The issues that we think have

22    merits for the federal habeas petition are the claims of denial

23    of due process, in that his plea was not knowing and voluntary.

24    And that he received ineffective assistance of counsel with

25    regard to the advice to plead guilty.

1          JUDGE BAXTER:  And it's the later one that the

2    government, the Commonwealth will argument is not exhausted.

3          MR. PATTON:  Well, I believe they're going to argue

4    that both of them are not exhausted.

5          JUDGE BAXTER:  All right.

6          MR. PATTON:  And the factual -- our basis for making

7    our arguments is going to be that Mr. McNatt was incarcerated on

8    August 6th of 1997, that's the date he allegedly committed the

9    offense of theft by deception.  At the change of plea, when it

10   was read to him, it was explained to him by the Judge, that you,

11   on August 6th 1997, committed this offense.  That was how the

12   offense was explained to him by the Judge at the change of plea.

13   That, he simply could not have committed the offense as charged.

14   Judge Lobaugh certainly corrected, it is theoretically possible

15   to commit the offense of deception if a person is not physically

16   present at the scene of the offense, but --

17         JUDGE BAXTER:  That's starting to --

18         MR. PATTON:  But the way that that was charged in

19   Venango County -- the charge was Mr. McNatt himself passed these

20   bad checks at Henry's Riverside Market and in the process of

21   passing the bad checks committed the theft by deception.

22         JUDGE BAXTER:  So you're arguing to me how Judge

23   Lobaugh discussed it is irrelevant to whether or not it was a

24   denial of due process, because the plea was not knowing and

25   voluntary because of what happened the day of the pled; is that

1    what you're saying?

2            MR. PATTON:  Well, to back up a step from that.

3            JUDGE BAXTER:  Okay.

4            MR. PATTON:  Because I cannot in good faith say that

5    the due process argument was -- whether or not the plea was

6    knowing and intelligent, was not addressed in the PCRA, because

7    it was addressed in the State PCRA.  I think if you read Judge

8    Lobaugh's --

9            JUDGE BAXTER:  Pages of it, yes, around the totality of

10   the circumstances around his plea.

11           MR. PATTON:  And I think probably the Judge Lobaugh's

12   discussion of what he, Judge Lobaugh refers to as the actual

13   innocence claim kind of goes part and parcel with whether or not

14   the plea was knowing and intelligent.

15           JUDGE BAXTER:  You think it should, because in here I

16   don't think it does, he talks about separate.

17           MR. PATTON:  He separates them out.  He treats them as

18   the actual innocence is completely separate.  I can't argue to

19   you a substantive basis for you to grant a federal writ of habeas

20   corpus that he's actually innocent, so that based on that finding

21   alone you should issue the writ of habeas corpus.

22           JUDGE BAXTER:  I understand.

23           MR. PATTON:  Okay.  But we do think the due process

24   claim has merit here.

25           JUDGE BAXTER:  Because he wasn't told at the plea

1    colloquy or the plea colloquy was deficient in that it had a date

2    certain.

3         MR. PATTON:  Our argument is going to be it's not

4    knowing and voluntary because he did not receive competent advice

5    from counsel.

6         JUDGE BAXTER:  That's two, I'm sticking to one.  I

7    understand your second one.

8         MR. PATTON:  But that can also form the basis of a due

9    process violation, not getting effective --

10         JUDGE BAXTER:  Under the 6th Amendment, right?

11         MR. PATTON:  If you get bad advice in entering a plea,

12    that can be a basis for finding that the plea is not knowing and

13    voluntary, or knowing and intelligent.  So it can be a part of a

14    substantive due process violation.

15         JUDGE BAXTER:  As well as a separate ineffective

16    assistance.

17         MR. PATTON:  Correct.

18         JUDGE BAXTER:  Okay.

19         MR. PATTON:  And I believe we can argue that as a

20    matter of Pennsylvania law, as Judge Lobaugh writes in his PCRA

21    Petition, one of the requirements of valid plea in Pennsylvania

22    is that there be a factual basis for the plea.  And that if they

23    did not establish an adequate factual basis for the plea

24    Mr. McNatt did not receive all of the process he was due and,

25    therefore, that in and of itself violates the federal due process

1    clause.

2            JUDGE BAXTER:  Okay.  I'm going to take a 10-minute

3    break now.

4            (Break taken.)

5            JUDGE BAXTER:  All right, Mr. Patton.

6            MR. PATTON:  Your Honor, as we were discussing before

7    the break, I believe that the habeas petition does raise a claim

8    of ineffective assistance of counsel argument.  Mr. McNatt

9    received ineffective assistance of counsel with regard to his

10   guilty plea and the decision to plead guilty.

11           I do not believe that that issue was raised in the PCRA

12    Petition or was considered in the PCRA Petition.  And so that

13    issue was not presented to the State courts and is not being

14    considered by the State courts.  I believe that the ineffective

15    assistance claim in the federal habeas petition, therefore, is

16    exhausted because it is not --

17           JUDGE BAXTER:  It's futile.

18           MR. PATTON:  Correct, because you can't file a second

19   PCRA Petition because he doesn't meet any of the exceptions for

20   filing the second PCRA Petition.  It wouldn't be timely if he

21   tried to file a second PCRA Petition and there is no effective

22   process for him now to file that claim with the State courts, it

23   is exhausted.

24           Now, of course, since it was not exhausted properly, it

25    would be procedurally defaulted and it would be incumbent on us

1    to establish that there is a way for this Court to excuse the

2    procedural default.  And we would propose to meet that under the

3    Carrier Standard of showing that there would be a miscarriage of

4    justice if Your Honor did not address the merits of the

5    ineffective assistance claim.

6            MS. SERVIDIO:  May I interrupt here for a minute?

7            JUDGE BAXTER:  Sure.

8            MS. SERVIDIO:  I see the ineffective claim in his first

9    argument in his PCRA to the Superior Court.  So it would be

10   addressed in the State court.

11           MR. PATTON:  Well, it's not addressed -- the

12   ineffective assistance of counsel claim is not addressed by Judge

13   Lobaugh.

14           JUDGE BAXTER:  That's interesting.

15           MR. PATTON:  It's not address to Judge Lobaugh and

16   so --

17           JUDGE BAXTER:  So the Superior Court might address it

18   and might say that it was not raised below.  Which is the reason

19   we never want to get to these things in the federal court before

20   the State court's looked at it.

21           Why don't you read to me what it is you're looking at,

22    Ms. Servidio.

23           MS. SERVIDIO:  It says legal argument, Point 1:  The

24   Defendant is entitled to an ineffectiveness ruling against plea

25   and sentence counsel for forcing the Defendant into a guilty plea

1    and for refusing to file an appeal as requested.  And then he

2    goes into his argument.

3         JUDGE BAXTER:  This is something that's always

4    interested me a great deal.  The opinions written by the County

5    judges, statement of matters complained of, I guess they're

6    called, actually dictate what's decided in the Superior Court,

7    yet they are not often precisely what the Plaintiff has brought

8    up or the prisoner in a PCRA case.  And I don't know how the

9    Superior Court treats that all of the time.

10        Sometimes I have seen the Superior Court just tackle

11    the issue, sometimes the Superior Court has said under the PCRA

12    findings of law it's being waived.  I mean, I don't know what to

13    say on that.

14        MR. PATTON:  Well, Your Honor, it is clearly not

15    addressed in Judge Lobaugh's opinion.

16        JUDGE BAXTER:  That's correct.

17        MR. PATTON:  And the ineffectiveness argument in the

18    brief argues an ineffectiveness for failing to argue double

19    jeopardy and for -- it does mention the actual innocence.  But

20    the Superior Court is not going to be able to address an argument

21    that wasn't addressed to the State PCRA Court and wasn't

22    addressed by the PCRA Court.  The Superior Court will say this

23    wasn't raised in front of Judge Lobaugh, therefore, it's waived

24    and we can't address it.

25        JUDGE BAXTER:  That's correct.

32

1              MR. PATTON:  Just as any appellate court says, you

2     can't raise issues for the first time on appeal.  And the actual

3     order that's under review by the Superior Court is Judge

4     Lobaugh's order denying the PCRA.  That order does not address

5     the issue of ineffective assistance of counsel based on providing

6     bad advice to plead guilty.

7              JUDGE BAXTER:  See this is the argument that that

8     Supreme Court case, that I don't remember the name  of.  It's the

9     ineffective assistance of counsel for not bringing up an

10    effective assistance of counsel.  But then again, you don't have

11    a right to an attorney on a PCRA Petition.

12             MR. PATTON:  Mr. McNatt would not be able to argue that

13    he received ineffective assistance of counsel in the PCRA

14    Petition.

15             JUDGE BAXTER:  As substantive claim, but he can argue

16    it as to why he didn't exhaust, I think.

17             MR. PATTON:  I don't believe that's accurate.

18             JUDGE BAXTER:  You don't think that's right.

19             MR. PATTON:  The entire ineffective assistance of

20    counsel argument is based on the fact that your constitutional

21    right to an attorney, to the effective assistance of counsel, was

22    violated because your attorney's conduct fell below an objective

23    standard of reasonableness and you were prejudiced.  But if you

24    do not have a constitutional right to the assistance of counsel

25    at the proceeding at issue, by definition there cannot be an

33

1    ineffective assistance of counsel.

2              JUDGE BAXTER:  All right.

3              MR. PATTON:  Which is why --

4              JUDGE BAXTER:  If it's been brought up to the Superior

5    Court how in the world am I supposed to be able to tackle the

6    issue here?  The whole point of the exhaustion requirement, the

7    culminating between the State and the Federal courts and to allow

8    the State courts to tackle the issue, even though we know it can

9    be said to be waived?

10             MR. PATTON:  Because when you look at what was raised

11   in the State courts, what was raised in the PCRA Petition that

12   Mr. McNatt filed in Venango County and what was ruled on by Judge

13   Lobaugh, it's not there.

14             Now, to the extent then if you're going the make a

15    finding that this claim hasn't been exhausted, that would be a

16    consession or admission on the part of the County that this

17    argument was properly raised in the State court proceedings and

18    was considered by the State courts.

19             JUDGE BAXTER:  Or that if this habeas petition is

20   premature.

21             MR. PATTON:  There certainly is the argument.

22             JUDGE BAXTER:  Or that we stay until the decision from

23   PCRA Petition appeal.

24             MR. PATTON:  Our position is you don't rule on the

25    ineffective assistance counsel claim because it was exhausted.

1          JUDGE BAXTER:  But I can't split it, it's a conundrum.

2          MR. PATTON:  But our position is that the ineffective

3    assistance of counsel claim is exhausted because it was not

4    raised properly in the PCRA proceedings and therefore --

5          JUDGE BAXTER:  Was it the case out of McKean County, I

6    believe you were on it, Mr. Patton, where -- which case was it,

7    the Frederick that was 20 years old.

8          MR. PATTON:  The PCRA had been pending for 11 years.

9          JUDGE BAXTER:  And we were able to go forward by saying

10   that he had waited long enough.

11         MR. PATTON:  Correct.

12         JUDGE BAXTER:  Do you have any case law on if something

13   is considered an inordinate delay if it means that the petitioner

14   wins he would be out of jail, because two years isn't so long.

15         MR. PATTON:  Well, Your Honor, the exhaustion

16   requirement can be excused if there is an absence of -- if there

17   is an absence of available State corrective process or

18   circumstances exist that render such process ineffective to

19   protect the rights of the applicant.

20              I would submit that given the circumstances of this

21    case, in the sense that if you were to address the merits of

22    Mr. McNatt's claim and they would be meritorious, the

23    Commonwealth would have to release Mr. McNatt immediately

24    because he is well beyond his max date.  That having to wait for

25    the Superior Court to rule on the issue, which could take years,

1    literally, that circumstances do exist that render such process

2    ineffective to protect the rights of the applicant.

3  Mr. McNatt's rights aren't going to be satisfactorily protected.

4            JUDGE BAXTER:  Have you looked for any cases?

5            MR. PATTON:  The cases that I have found that have

6    relied on those are the inordinate delay cases.

7            JUDGE BAXTER:  But do any of them have the issue that

8    the petitioner would be out of jail?

9            MR. PATTON:  No, not that I have found.

10           JUDGE BAXTER:  Yes, because that's a different set of

11   circumstances.

12           MR. PATTON:  Correct.

13           JUDGE BAXTER:  It changes how much time is too much.

14           MR. PATTON:  Correct.

15           JUDGE BAXTER:  I mean, we all agree that 11 years

16   pending a PCRA Petition is too much, but is two years too long

17   when a man could have been out of jail six months ago?

18           MR. PATTON:  We would submit that it is.  Because if

19   his claims are valid and I understand, you know, we aren't --

20           JUDGE BAXTER:  You have to get past the merits.

21           MR. PATTON:  Correct.  If his claims are valid, he's,

22   you know, already close to nine months past what his proper

23   maximum was.  And, you know, it's every extra day he has to spend

24   in jail now is just heightening the penalty he's paying for a

25   violation of his federal constitutional rights.

36

1          JUDGE BAXTER:  Well, I know you have more to tell me,

2    but I'm going to turn to the Commonwealth for a minute here.  And

3    you can put together your thoughts of things that you would want

4    to say that you didn't.  But this is where you hang your hat;

5    isn't it, the exhaustion argument, isn't it?

6          MS. SERVIDIO:  That's correct, Your Honor.

7    Petitioner's counsel did give good background here.  I know he

8    made note to a plea colloquy and he read correctly from it and I

9    would move to admit it.

10          JUDGE BAXTER:  It's not in the brief.

11          MS. SERVIDIO:  No, it's not, Your Honor.

12          JUDGE BAXTER:  Any objection Mr. Patton?

13          MR. PATTON:  No, Your Honor.

14          JUDGE BAXTER:  We will place that in the record as

15    well.

16          MS. SERVIDIO:  And as far as the PCRA is concerned, I

17    know that Judge Lobaugh did not address it when he denied the

18    PCRA.  But it was on the 14th of July, 2004, when petitioner

19    first submitted it, he did argue ineffectiveness of counsel as

20    well in his amendment to the PCRA, so it's also in his --

21          JUDGE BAXTER:  It's in his rebuttal here too.

22          MS. SERVIDIO:  And there's no telling exactly what the

23    Superior Court would do in this case.

24          JUDGE BAXTER:  You say its in the original PCRA filed

25    by Mr. McNatt.

1          MS. SERVIDIO:  Yes, Your Honor, which is on Page 59 of

2     the Commonwealth's submission.

3          JUDGE BAXTER:  See, County judges, whenever they write

4     these things in the matters of Plaintiff on appeal they miss

5     stuff.  It's very likely that the Superior Court is going to

6     discuss this issue.

7          MS. SERVIDIO:  That's correct, Your Honor.  Even though

8     Judge Lobaugh didn't address it, he did maintain that his counsel

9     was ineffective in both the PCRA and the amendment to it, as well

10    as the appeal to the Superior Court.  And the information itself

11    that's on No. 183 of 1998 that we're discussing here.

12         JUDGE BAXTER:  Yes, I have that.

13         MS. SERVIDIO:  August 6th is the date -- it's on or

14    about August 6th and clearly I shouldn't say clearly, I hate that

15    word.  But the dates given on the checks that the petitioner was

16    aware of were in July.

17         JUDGE BAXTER:  So where did that date come from, do you

18    know?

19         MS. SERVIDIO:  That's the date that all of the checks

20    were cashed and they put August 6th down.  That's when the checks

21    came back as having been cashed, that's my understanding.  They

22    all bounced or were found to be not honored by the drawer at that

23    time.

24         JUDGE BAXTER:  So we're talking about a --

25         MS. SERVIDIO:  I have it as July 12th through the 18th.

1          JUDGE BAXTER:  Yes, I see that.

2          MS. SERVIDIO:  And also, in the plea colloquy itself,

3    his defense counsel --

4          JUDGE BAXTER:  We're talking about a technicality

5    mistake.

6          MS. SERVIDIO:  He states specifically, actually, it

7    says July 14th, now that I think about.

8          JUDGE BAXTER:  It says the 14th on the first Complaint.

9          MS. SERVIDIO:  I'm addressing the plea colloquy itself.

10         JUDGE BAXTER:  Oh, yes, he read that.  It says on

11   August 6th.

12         MS. SERVIDIO:  Actually, Mr. Hindman mentions July 14th

13   through August 6th.  But one of the checks themselves says July

14   12th, so it would actually be, at the very least, dated prior to

15   the 14th.

16         JUDGE BAXTER:  And then the Judge said -- the thing

17   that he read to me was what the Judge said, "Do you agree that on

18   the 6th of August you did this," and he agreed.

19         MS. SERVIDIO:  That's correct, Your Honor.  I guess it

20   goes to the interpretation of how you read the on or about 6th

21   day of August and the facts behind that.

22         JUDGE BAXTER:  Yes, but I think it's a different thing

23   that's written here and what's in the colloquy.  Because if we're

24   talking about due process for the colloquy, due process at the

25   time of the pleading, that time would be more important.

1          MS. SERVIDIO:  Well, the problem then is that defense

2    counsel makes a -- states dates different from the Judge,

3    himself, and Mr. McNatt does agree at that time.

4          JUDGE BAXTER:  And was it in the plea colloquy or it

5    was in the sentencing argument that the attorney brought up that

6    he was incarcerated in Lackawanna County.

7          MS. SERVIDIO:  That's correct, Your Honor.  And this is

8    more muddled and that's why respondent would argue that all of

9    these need to be exhausted in the State court.  And as far as the

10   ineffectiveness is concerned, that is addressed there as well and

11   needs to be addressed there before coming to this Court, Your

12   Honor.

13         JUDGE BAXTER:  Can I have Judge Lobaugh's -- I'm sorry,

14   go ahead.

15         MS. SERVIDIO:  Then there's always judicial economy

16   argument, Your Honor.

17         JUDGE BAXTER:  More than just judicial economy, I think

18   we owe a duty to the State court to let them deal with their

19   problems in the first instance.

20         MS. SERVIDIO:  That's correct.  And I would cite

21   Biccard and Connor v. Sicarelli (phonetic).

22         JUDGE BAXTER:  And if it's actually going to be dealt

23   with in the Superior Court.

24         MS. SERVIDIO:  And I can assure you, Your Honor, when

25   I'm briefing I will be addressing the ineffectiveness claim to

1    the Superior Court.

2              JUDGE BAXTER:  And also the denial of due process, is

3    that in here?

4              MS. SERVIDIO:  I beg your pardon?

5              JUDGE BAXTER:  Well, it sort of is that he attacks the

6    plea.  You don't disagree with that, do you, Mr. Patton?

7              MR. PATTON:  The due process claim is argued and

8    presented in the PCRA?

9              JUDGE BAXTER:  Yes.

10             MR. PATTON:  I do not agree that the due process

11   argument --

12             JUDGE BAXTER:  In a State way, it was brought in the

13   State argument that the plea was not good.

14             MR. PATTON:  That the plea was not knowing and

15   intelligent.

16             JUDGE BAXTER:  Tell me about State law in -- does the

17   factual basis of the plea need to be absolutely accurate?

18   Because they sort of -- that's what he was arguing, the factual

19   basis of the plea, because it seems to be a factor here.  Is

20   there a factual basis for the plea?

21             MS. SERVIDIO:  I think that the response that Judge

22   Lobaugh makes to that is addressed in there.

23             JUDGE BAXTER:  The factual basis was developed for both

24   charges through examination of the Defendant by the Defendant's

25   counsel and the assistant district attorney at the plea of

1    colloquy.

2            MS. SERVIDIO:  It does not have to be exactly precise,

3    if that's what you're asking.

4            JUDGE BAXTER:  Well, here's what my question is

5    actually.  Is the factual basis that which is spoken on the day

6    of the colloquy, the plea, or is the factual basis what was in

7    the language, which says on or about?  Is it everything that was

8    told to the Defendant before he pleads?  Is there any discussion

9    of that in the cases?

10           You see what I'm saying.  If it's just what was said to

11    him that day, then his argument is stronger.  If it's all of the

12    information he had going into the plea, his argument is weaker.

13           MS. SERVIDIO:  It's all of the surrounding

14    circumstances.

15           JUDGE BAXTER:  It's a totality argument.

16           MS. SERVIDIO:  Absolutely.  It's not merely the

17    statement at the time of plea, but it's the information that the

18    Defendant receives prior to making a plea and he is informed

19    exactly what's in the information and what he would be admitting

20    to.

21           A lot of times pleas are not accepted because there's

22    not a close enough factual basis -- well, I shouldn't say a lot

23    of times.  On occasion.

24           JUDGE BAXTER:  My staff attorney just gave me the plea

25    colloquy.  On Page 21 his attorney says, "He's being held --

1    during the times these crimes occurred he was in Lackawanna

2    County," in the plea colloquy.  Do you see that, in the plea

3    colloquy?

4              MS. SERVIDIO:  In the plea colloquy?

5              JUDGE BAXTER:  Yes, Page 21.  Mr. Hindman, "He's being

6    held -- during the times these crimes occurred he was in

7    Lackawanna County."  You were standing right next to him when he

8    said it, Mr. McNatt.  "He wished that I would bring it to the

9    Court's attention when sentence is concurred, bring it into

10   consideration -- the same time these crimes were occurring."

11             Now, it's obvious that they were talking about

12    sentencing, because it's pre-sentence information.

13             MR. PATTON:  Your Honor, I think they were talking

14   about whether they were going to get a PSI.  And if you go to the

15   sentencing transcript, during the sentencing transcript they talk

16   about whether there's a pre-sentence report.

17             JUDGE BAXTER:  Should they use the one in Lancaster or

18   Lackawanna County.

19             MR. PATTON:  And the parties say, Judge, there isn't

20   one, so we were going to get one from another County, they didn't

21   have one.  So there was a discussion about what his prior record

22   score would be.

23             MS. SERVIDIO:  That's correct.  On the page before it

24   does indicate with regard to the PSI.

25             MR. PATTON:  And his attorney also was going to --

1    planning on arguing -- using as an argument for why the Venango

2    County cases should be concurrent with the Lackawanna County

3    case, or at least partially concurrent.  The offenses occurred

4    very closely in time to one another.  But I see what where you're

5    mentioning here on Page 21.

6            JUDGE BAXTER:  Yes.  I mean, the reason I'm saying that

7    is Mr. McNatt heard it.

8            MS. SERVIDIO:  And he does address the concurrency

9    issue in the sentencing, defense counsel.

10           JUDGE BAXTER:  I'm looking at Judge Lobaugh's opinion

11   now, Ms. Servidio, and here's what I'm looking at.  Page 16, the

12   three elements of theft by deception are intentionally obtaining

13   or withholding property, property belongs to another, and

14   deception.  Why should I not say that the intentionally or

15   withholding property has to have been on August 6th?  And how

16   could he intentionally retain or withhold property?

17           MS. SERVIDIO:  You're going to have to -- I don't have

18   a copy of the --

19           JUDGE BAXTER:  You know, if he had been -- here's my

20   thinking on this.  If they had -- and I'm jumping around from

21   exhaustion to the merits of the claim.  But my thinking on this

22   is, if he had been charged or convicted or pled to passing bad

23   checks, that's a different argument in my mind, because those

24   could have been passed with his not being there.  And the date

25   would into the have been as crucial.

1              But if these are the elements for theft by deception,

2       does he not have to on the date charged have obtained or

3       withheld property and how could he have -- this is very

4       difficult.

5              MS. SERVIDIO:  Yes.

6              JUDGE BAXTER:  Because he would have gotten the

7       property that he wrote the checks for in July.

8              MS. SERVIDIO:  So what where you're saying is that on

9       August 6th he couldn't have intentionally withheld the property

10      on that specific date.

11             JUDGE BAXTER:  Yes, and that's what he pled to, so this

12      is mighty confusing.

13             MS. SERVIDIO:  Well, I would argue that what he pled is

14      that, in fact, he did commit the crime of theft by deception.

15             JUDGE BAXTER:  That's what he plead to?

16             MS. SERVIDIO:  Yes.  Those are the dates as outlined by

17      his attorney during the plea colloquy.  And in fact, Mr. McNatt

18      does respond, gives additional information in the plea colloquy,

19      not just to events that --

20             JUDGE BAXTER:  Yes, I read that just when I was on

21      break.

22             MS. SERVIDIO:  It's actually Peddler's Village and not

23      Beddler's.

24             JUDGE BAXTER:  He says, "I signed the front of the

25      check with a false name, yes."  "What did you receive, cash and

45

1    merchandise?"  Well, here's what I see, you guys.

2            MR. PATTON:  Judge, if you follow that onto the top

3    of -- the district attorney does some follow-up on some factual

4    basis.  On Page 15, just from what you were looking at, to where

5    they say Peddler's Village and then Mr. McNatt says -- and he

6    says Peddler's Village.  If you go down to Page -- Mr. Grossi

7    then starts asking questions.  Mr. Grossi being the prosecutor.

8    And he starts talking about -- he originally starts talking about

9    the forgery at 182.

10           JUDGE BAXTER:  Yes.

11           MR. PATTON:  But if you go then over to the top of Page

12   16, the second line, it says -- Mr. Grossi says.  And at

13   Riverside you cashed a check and those checks would not be

14   honored."  Mr. McNatt, "Yes, I forged them, yes."  But it was --

15   you know, the factual basis of the Commonwealth is that,

16   supposedly, Mr. McNatt personally was there, passed the check and

17   committed the theft by deception by doing so.

18           MS. SERVIDIO:  So the argument here is just that the

19   August 6th is big problem.  Because it says on the information

20   August 6th, and the Judge at the time of the plea colloquy stated

21   August 6th, rather than saying specifically at the time on or

22   about August 6th.  Even though the information itself says on or

23   about and even though the Defendant states in here that he did

24   commit these acts.  And not only did he cash the checks, he

25   actually states that he forged them.  That notwithstanding all of

46

1    that, he has a claim of --

2              JUDGE BAXTER:  That is Mr. Patton's life.

3              MS. SERVIDIO:  He's innocent because he was

4    incarcerated on August 6th.

5              JUDGE BAXTER:  That's what this boils down to, if I get

6    past exhaustion.

7              MS. SERVIDIO:  None of these claims have been

8    exhausted.  They are all still in --

9              JUDGE BAXTER:  Still up in the --

10             MS. SERVIDIO:  At the Superior Court at this time.

11             JUDGE BAXTER:  I think the key on that is decide the

12   issue of whether or not -- I mean, two years is not too long

13   under the law, under the case law.  But is two years too long

14   when someone could be out.  So that's the hard question that I

15   have to get past first.  If I get past that one -- and then, as

16   you described it, it's the hard question.  Is there anything else

17   you want to say?

18             MS. SERVIDIO:  No, Your Honor.

19             MR. PATTON:  Your Honor --

20             JUDGE BAXTER:  As I outline them, that's --

21             MR. PATTON:  Your Honor, I will endeavor to try to do

22   some more research to see if I can come up with a case solely on

23   the question of is two years too long if the person is going to

24   be out.  I would certainly -- if I find something.

25             JUDGE BAXTER:  I'm trying to go through all of the

1    cases in this Circuit where time is an issue.  And quite
2    candidly, the Circuit will let time be the issue if they want to
3    get to the underlying merits.  I mean, its' that obvious.  If
4    they want to get to the underlying merits of the case, they will
5    find a way to get through cause and prejudice and miscarriage of
6    justice.  And if we find a case, that would be great.
7         MR. PATTON:  If I find anything, I will contact
8    opposing counsel first before submitting it to Your Honor.
9         JUDGE BAXTER:  Why don't you take a minute and talk to
10   your client and see if there's anything else you want to add.
11        MR. PATTON:  Your Honor, we have nothing more to
12   present.  We would ask that you make clear to the Department of
13   Corrections that Mr. McNatt's presence on the current writ is no
14   longer required, that he can be get back, and he asks that they
15   get him back to Houtzdale as soon as possible.
16        JUDGE BAXTER:  Is that a separate order?
17        MR. PATTON:  I don't think so.  The writ says that I
18   have to keep him here until you're done.
19        JUDGE BAXTER:  And can I tell that to these gentlemen?
20        MR. PATTON:  I think so.
21        JUDGE BAXTER:  He can be returned to Houtzdale.
22        MR. PATTON:  We ask that -- he has his visits coming
23   up, and his visitor only comes once a month, and she's planning
24   on coming the beginning of the month.
25        JUDGE BAXTER:  And he wants to get there.

1          MR. PATTON:  Correct.

2          JUDGE BAXTER:  I can't assure you that you'll get there

3     that fast.  These things take a long time, I'm afraid.

4

5          (Hearing concluded at 12:00 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

49

1                    C E R T I F I C A T I O N

2

3        I, Heather E. Nass, a Court Reporter and

4        Notary Public in and for the Commonwealth of

5        Pennsylvania, do hereby certify that the foregoing

6        is a true and accurate transcript of my

7        stenographic notes in the above-captioned matter.

8

9

10

11          _____

12          Notary Public

13

14

15          Dated:_____

16

17

18

19

20

21

22

23

24

25