IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWARD JOSEPH McNATT,       )
                                   )
      Petitioner         )
                                   )
        v.           )    C. A. No. 05-124 Erie
                                   )
JUDGE OLIVER LOBAUGH, et al.,   )
                                   )
      Respondents.     )

**PETITIONER, EDWARD JOSEPH McNATT'S, MOTION TO
RECONSIDER MEMORANDUM ORDER ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

AND NOW, comes the petitioner, Edward Joseph McNatt, by his attorney, Thomas W.

Patton, Assistant Federal Public Defender, and files his Motion to Reconsider Memorandum

Order Adopting Magistrate Judge's Report and Recommendation:

Judge Baxter's Report and Recommendation (R and R) recommended that Edward's

habeas petition be dismissed for failure to exhaust.  The R and R solely addressed the exhaustion

issue.  Edward filed objections to the R and R addressing the exhaustion issue.  Again, the R and

R recommended dismissal solely on the ground that Edward had failed to exhaust his state court

remedies.  Edward explained in his objections to the R and R that he no longer had a PCRA

petition pending in state court and could not file a second PCRA petition pursuant to state law,

and therefore his claims were exhausted.  At the Court's direction, the Commonwealth responded

to Edward's objections and agreed that Edward no longer had a pending PCRA petition in state

court and that Edward could not raise his claims in a second PCRA petition.  Thus, the

Commonwealth conceded that Edward's claims were exhausted.  Without any citation to

authority, and without actually using the correct terminology, the Commonwealth made what

amounted to an argument that Edward's claims were procedurally defaulted because they had not

been properly presented to the state courts.  However, Judge Baxter's R and R did not address

procedural default, so the issue of procedural default was not before this Court in its review of

Judge Baxter's R and R.  Since the Commonwealth has conceded that Edward's claims are

exhausted, the proper course is to remand the case to Judge Baxter.  If the Commonwealth

wishes to argue that Edward's claims are procedurally defaulted, they can raise that claim, which

is an affirmative defense, before Judge Baxter where it can be litigated.  During that litigation

Edward will convincingly explain why the procedural default of his claim is excused, as failure

to excuse the default will result in a miscarriage of justice.  As the record stands now, this Court

has found that Edward's claims are procedurally defaulted without providing Edward any

opportunity to address the issue.

Exhaustion v. Procedural Default

The Commonwealth and this Court have confused two related but distinct concepts in

habeas corpus jurisprudence: exhaustion of state court remedies and procedural default.  The

leading treatise in habeas corpus law explains the difference between these two concepts.

> An exhaustion-related issue that arises with some frequency at the
> postfiling stage is the relationship between the doctrine of exhaustion and the
> doctrine of independent and adequate state procedural grounds. . . . Both of these
> doctrines involve situations in which a failure to present a claim in the state courts
> bars the granting of federal habeas corpus relief in the federal courts.  But the
> doctrines are distinct and have different repercussions.  The exhaustion doctrine is
> an *ordering* device.  It allows the state court system *if it chooses*, to decide the
> merits of the claim *first*.  Once the state courts either have rejected the claim on its
> merits or are shown to have no available means of reaching the merits, the
> exhaustion requirement is satisfied.  The exhaustion requirement thus never
> wholly forecloses, but only postpones, federal relief.  The procedural default

2

doctrine is potentially a far more decisive obstacle to federal relief.  A claim is procedurally defaulted if the state courts unambiguously denied relief on it because the petitioner substantially failed to comply with a reasonable and evenhandedly applied state procedural rule governing how and when the claim should have been presented in the state courts.  If a default occurs, if the state asserts it as a defense to habeas corpus relief, and if none of the exceptions to the procedural rule apply, then federal court relief if *foreclosed*.

> As mentioned earlier and as will be explained at greater length in this chapter, a procedural default may avoid dismissal of a federal habeas corpus claim on exhaustion grounds if the default renders previously unexhausted state remedies unavailable to the petitioner as a matter of state law.

Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure, §23.1, pp. 1053-54 (5th ed. 2005) (footnotes omitted).

This distinction between exhaustion and procedural default is also discussed at length by Justice Stevens in his dissenting opinion in O'Sullivan v. Boerckel, 526 U.S. 838, 850-57, 119 S.Ct. 1728, 1735-38 (1999) (Stevens, J., dissenting).  "To be sure, the fact that a prisoner has failed to invoke an available state procedure may provide the basis for a conclusion that he has waived a claim.  **But the exhaustion inquiry focuses entirely on the availability of state procedures at the time when the federal court is asked to entertain a habeas petition.**"  Id. (emphasis added).  Justice Stevens went on to explain the interplay of exhaustion and procedural default.

> In order to protect the integrity of our exhaustion rule, we have also crafted a separate waiver rule, or–as it is now commonly known–the procedural default doctrine.  The purpose of this doctrine is to ensure that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that they give state courts a sufficient opportunity to decide those claims before doing so.  If we allowed state prisoners to obtain federal review simply by letting the time run on adequate and accessible state remedies and then rushing into the federal system, the comity interests that animate the exhaustion rule could easily be thwarted.  We therefore ask in federal habeas cases not only whether an applicant has exhausted his state remedies; we also ask how he has done so.  This

> second inquiry forms the basis for our procedural default doctrine: A habeas petitioner who has concededly exhausted his state remedies must also have *properly* done so by giving the State a fair "opportunity to pass upon [his claims]." <u>Darr v. Burford</u>, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). When a prisoner has deprived the state courts of such an opportunity, he has procedurally defaulted his claims and is ineligible for federal habeas relief save a showing of "cause and prejudice," <u>Murray v. Carrier</u>, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or "'a fundamental misscarriage of justice'" *id*., at 495, 106 S.Ct. 2639.

<u>O'Sullivan</u>, 526 U.S. at 853-53, 119 S.Ct. 1736-37.  The majority in <u>O'Sullivan</u> acknowledged that it did "not disagree with Justice Stevens' general description of the law of exhaustion and procedural default.  Specifically, we do not disagree with his description of the interplay of these two doctrines." <u>Id</u>. at 848, 1734.

Judge Baxter's R and R dealt exclusively with exhaustion.  Accordingly, Edward's objections to the R and R dealt exclusively with exhaustion.  The Commonwealth's answer to Edward's objections conceded that Edward's claims were exhausted.  This Court then erroneously found that "a Petitioner may not bring about exhaustion of his own claims by filing a voluntary dismissal in state court; such a maneuver does not provide the state courts with a fair and full opportunity to review the merits of Petitioner's claims, as is intended by the exhaustion doctrine." Memorandum Order p.1.  As the above law establishes, a Petitioner can bring about exhaustion of his claims by voluntarily dismissing a pending state post-conviction petition.  The question of whether so doing results in a procedural default is a separate inquiry, one which has not addressed in Judge Baxter's R and R.  The Court's Memorandum Order mixes exhaustion with procedural default and essentially finds that Edward's claims are procedurally defaulted, without ever having given Edward an opportunity to argue and establish that the procedural default must be excused to avoid a miscarriage of justice.

4

<u>The Miscarriage of Justice Jurisprudence</u>

The Supreme Court has recognized that a habeas petitioner can avoid the consequences of a procedural default, even if he can not show cause to excuse the default, if he can show that his case falls within the "narrow class of cases . . . implicating a fundamental miscarriage of justice." <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94, 111 S.Ct. 1454, 1469-1470.  One way in which a habeas petitioner can establish a fundamental miscarriage of justice is to prove that he is actually innocent.  As the Court explained in <u>Murray v. Carrier</u>, 477 U.S. 478, 537, 106 S.Ct. 2639, 2649 (1986), "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  The showing of actual innocence allows the petitioner to overcome the procedural default and have the habeas court address his otherwise defaulted claims on their merits.  <u>Schlup v. Delo</u>, 513 U.S. 298, 315, 115 S.Ct. 851, 861 (1995).

In <u>Schlup</u> the Supreme Court specifically adopted the <u>Carrier</u> standard for claims of actual innocence.  <u>Id</u>. at 326-27, 867.  The Court stressed that "the <u>Carrier</u> standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt."  <u>Id</u>. at 328, 115 S.C.t 867.  Accordingly, when a court applies the <u>Carrier</u> standard "the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence."  <u>Id</u>.  Thus, the question is **not** whether Edward is factually innocent.  <u>Id</u>. at 328, 115 S.Ct. 868 n.47.  The question is whether there is reasonable doubt of Edward's guilt.

"The <u>Carrier</u> standard requires the habeas petitioner to show that a constitutional violation

has probably resulted in the conviction of one who is actually innocent.  To establish the requisite

probability, the petitioner must show that it is more likely than not that no reasonable juror would

have convicted him in the light of the new evidence."  Id. at 327, 115 S.Ct. 867 (internal

quotation omitted)  "[T]he standard requires the district court to make a probabilistic

determination about what reasonable, properly instructed jurors would do."  Id. at 329, 868.  "It

must be presumed that a reasonable juror would consider fairly all of the evidence presented.  It

must also be presumed that such a juror would conscientiously obey the instructions of the trial

court requiring proof beyond a reasonable doubt."  Id.

It is important to realize that this review is not the equivalent of reviewing the sufficiency

of the evidence in support of a guilty verdict under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct.

2781 (1979).  Schlup, 513 U.S. at 330, 115 S.Ct. at 868.  The Jackson standard focuses on

whether any reasonable juror **could** have found the defendant guilty.  The Carrier standard, with

its use of the word **would**, "focuses the inquiry on the likely behavior of the trier of fact."  Id.

"Thus, though under Jackson the mere existence of sufficient evidence to convict would be

determinative of petitioner's claim, that is not true under Carrier.  Id. at 330, 115 S.Ct. 869.  It

was this difference in the legal standards that allowed the Supreme Court to find potential merit

in Schlup's actual innocence claim.  Id.

Schlup had been convicted of murdering an inmate in a Missouri correctional facility.

The evidence against Schlup included testimony from two prison officials who witnessed the

murder and positively identified Schlup as one of the murders.  Id. at 331, 115 S.Ct. 869.

Accordingly, there was certainly sufficient evidence to support Schlup's murder conviction.  Id.

However, the new evidence presented by Schlup to prove his actual innocence under Carrier

(again this is legal innocence, not factual innocence) included sworn statements of several

eyewitnesses that Schlup was not involved in the murder and alibi evidence that placed Schlup in

the prison dining hall at a time that would have made it impossible for him to have committed

the murder.  Id.  The Supreme Court found that if this new evidence was credited, "it surely

cannot be said that a juror, conscientiously following the judge's instructions requiring proof

beyond a reasonable doubt, would vote to convict.  Under a proper application of . . . Carrier,

petitioner's showing of innocence is not insufficient solely because the trial record contained

sufficient evidence to support the jury's verdict."  Id.

      Defense counsel has twice had this Court excuse procedural default based upon a finding

that a miscarriage of justice had occurred.  In Tice v. Wilson, CA No. 03-9 E, and Majeed v.

Walters, C.A. No. 98-62 E, this Court adopted a report and recommendation filed by Judge

Baxter in which Judge Baxter found that the petitioners' claims were procedurally defaulted but

found that the default should be excused due to a miscarriage of justice.  Edward can make the

same showing in his case.

      The conviction Edward is challenging arose from an information filed against him in the

Venango County Court of Common Pleas in case number 183 of 1998.  That information

charged that "on or about Wednesday, the 6th day of August, 1997," Edward committed four

counts of writing bad checks in violation of 18 Pa.C.S.A. § 4105 by passing bad checks at

Henry's Riverside Market in Venango County.  Edward was charged in count five of the

information with theft by unlawful taking in violation of 18 Pa.C.S.A. § 3922(a)(1), that charge

being based on obtaining the property from Henry's Riverside Market by creating the false

impression with the bad checks that he was actually paying for the property.  Finally, count six of

the information charged Edward with receiving stolen property in violation of 18 Pa.C.S.A. §

3925(a), based upon his receiving the property obtained from Henry's Riverside Market with the

bad checks.  Commonwealth's Answer to Writ of Habeas Corpus, Exhibit 2.  Edward pled guilty

to count five, theft by unlawful taking.  Id. at 2.  The problem with this conviction is that on

August 6, 1997, Edward was incarcerated in the Lackawana County jail and had been so since

July 20, 1997.  Edward wasn't released from the Lackawana County jail until December 2, 1997,

when he was turned over to the Pennsylvania Department of Corrections to serve a sentence of

imprisonment on an unrelated charge out of Lackawana County.  Transcript of hearing before

Judge Baxter, p. 7-8 (dkt # 24).  Obviously, if Edward was incarcerated in the Lackawana County

jail from July 20, 1997 through December 2, 1997, he did not commit the offense of theft by

unlawful taking at Henry's Riverside Market in Venango county on or about August 6, 1997.

Edward can use this showing of a miscarriage of justice to excuse the procedural default

of his claim that his trial counsel was ineffective in allowing him to plead guilty to a crime he

supposedly committed while incarcerated.  Edward's counsel discussed this very issue during the

hearing before Judge Baxter.  Transcript p. 30.  At a minimum, Edward has a strong argument

that his claim of ineffective assistance of counsel must be addressed on the merits even if it is

procedurally defaulted to avoid a miscarriage of justice.  Edward has not been given the

opportunity to present this argument to Judge Baxter or this Court.  Accordingly, no record has

been developed on this issue and this Court does not have the facts necessary to rule on whether

or not Edward's procedural default of his ineffective assistance of counsel claim should be

excused.  That is why this case needs to be remanded to Judge Baxter.

Conclusion

At the invitation of the Commonwealth, this Court has dismissed Edward's petition for a writ of habeas corpus because his claims are procedurally defaulted while ruling on objections to a Report and Recommendation that dealt exclusively with exhaustion.  In so doing the Court has inadvertently confused the related but separate doctrines of exhaustion and procedural default thereby depriving Edward of the opportunity to present evidence that his procedural default should be excused.  Accordingly, this Court must reconsider its Memorandum Order adopting Judge Baxter's Report and Recommendation and remand the case to Judge Baxter so that the procedural default issue may be addressed.  Alternatively, this Court should issue a certificate of appealability so that Edward can present the exhaustion/procedural default issue to the United States Court of Appeals for the Third Circuit.

Respectfully submitted,


/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
PA I.D. No. 88653