IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD JOSEPH McNATT, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) C. A. No. 05-124 Erie |
| | ) |
| JUDGE OLIVER LOBAUGH, et al., | ) |
| | ) |
| Respondents. | ) |

**PETITIONER, EDWARD JOSEPH McNATT'S, MEMORANDUM OF LAW
IN SUPPORT OF HIS SHOWING OF A MISCARRIAGE OF JUSTICE**

AND NOW, comes the petitioner, Edward Joseph McNatt, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and files his Memorandum of Law in Support of his Showing of a Miscarriage of Justice:

This Court has ordered Edward to file a brief specifically addressing the issue of whether the dismissal of his claims as procedurally defaulted would amount to a fundamental miscarriage of justice. This memorandum of law explains why Edward would suffer a miscarriage if the Court were to dismiss his claims as being procedurally defaulted.

The Miscarriage of Justice Jurisprudence

The Supreme Court has recognized that a habeas petitioner can avoid the consequences of a procedural default, even if he can not show cause to excuse the default, if he can show that his case falls within the "narrow class of cases . . . implicating a fundamental miscarriage of justice." McCleskey v. Zant, 499 U.S. 467, 493-94, 111 S.Ct. 1454, 1469-1470. One way in which a habeas petitioner can establish a fundamental miscarriage of justice is to prove that he is actually innocent. As the Court explained in Murray v. Carrier, 477 U.S. 478, 537, 106 S.Ct. 2639, 2649

1

(1986), "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." The showing of actual innocence allows the petitioner to overcome the procedural default and have the habeas court address his otherwise defaulted claims on their merits. Schlup v. Delo, 513 U.S. 298, 315, 115 S.Ct. 851, 861 (1995).

In Schlup the Supreme Court specifically adopted the Carrier standard for claims of actual innocence. Id. at 326-27, 867. The Court stressed that "the Carrier standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt." Id. at 328, 115 S.C.t 867. Accordingly, when a court applies the Carrier standard "the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence." Id. Thus, the question is **not** whether Edward is factually innocent. Id. at 328, 115 S.Ct. 868 n.47. The question is whether there is reasonable doubt of Edward's guilt.

"The Carrier standard requires the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327, 115 S.Ct. 867 (internal quotation omitted) "[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." Id. at 329, 868. "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial

court requiring proof beyond a reasonable doubt." Id.

It is important to realize that this review is not the equivalent of reviewing the sufficiency of the evidence in support of a guilty verdict under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). Schlup, 513 U.S. at 330, 115 S.Ct. at 868. The Jackson standard focuses on whether any reasonable juror **could** have found the defendant guilty. The Carrier standard, with its use of the word **would**, "focuses the inquiry on the likely behavior of the trier of fact." Id. "Thus, though under Jackson the mere existence of sufficient evidence to convict would be determinative of petitioner's claim, that is not true under Carrier. Id. at 330, 115 S.Ct. 869. It was this difference between the two legal standards that allowed the Supreme Court to find potential merit in Schlup's actual innocence claim. Id.

Schlup had been convicted of murdering an inmate in a Missouri correctional facility. The evidence against Schlup included testimony from two prison officials who witnessed the murder and positively identified Schlup as one of the murders. Id. at 331, 115 S.Ct. 869. Accordingly, there was certainly sufficient evidence to support Schlup's murder conviction. Id. However, the new evidence presented by Schlup to prove his actual innocence under Carrier (again this is legal innocence, not factual innocence) included sworn statements of several eyewitnesses that Schlup was not involved in the murder and alibi evidence that placed Schlup in the prison dining hall at a time that would have made it impossible for him to have committed the murder. Id. The Supreme Court found that if this new evidence was credited, "it surely cannot be said that a juror, conscientiously following the judge's instructions requiring proof beyond a reasonable doubt, would vote to convict. Under a proper application of . . . Carrier, petitioner's showing of innocence is not insufficient solely because the trial record contained

sufficient evidence to support the jury's verdict." Id.

Edward's Innocence

The conviction Edward is challenging arose from an information filed against him in the Venango County Court of Common Pleas in case number 183 of 1998. The information charges in relevant part:

> THE DISTRICT ATTORNEY OF VENANGO COUNTY, by this information charges that on or about Wednesday, the 6th day of August, 1997, in said County of Venango, Pennsylvania, the defendant:
>
> COUNT 1-4 - BAD CHECKS - MULTIPLE CHECKS AT ONE BUSINESS - (M2)
>
> did unlawfully issue or pass checks, at Henry's Riverside Market, located in Venango County, PA, as enumerated below by check number, date of check and its amount, all drawn on Account      1845 of the PNC Bank of Oil City, knowing that these checks would not be honored by the drawer:

| Check Number | Date of Check | Amount of Check |
| --- | --- | --- |
| 6555 | 7/12/97 | $200.00 |
| 6557 | 7/14/07 | $173.15 |
| 6558 | 7/15/07 | $200.00 |
| 6560 | 7/18/07 | $200.00 |

> Said conduct constitutes (4) counts of Bad Checks [18 P.S. 4105 (a)] and constitutes the defendant's third or subsequent bad check offense within five years.
> [18 P.S. 4105]
>
> COUNT 5 - THEFT BY DECEPTION - (M2)
>
> did unlawfully and intentionally obtain or withold [sic] the property of another by deception in that he created or reinforced a false impression as to law, value, intention or other state of mind; to wit: did the acts described above.
> [18 P.S. 3922 (a)(1)].

The Bad Checks statute, 18 Pa.C.S.A. § 4105(a)(1) states that "[a] person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing

that it will not be honored by the drawee." The crime is completed when a check is issued or passed knowing that the check will not be honored. Commonwealth v. Mutnik, 406 A.2d 516, 518 (Pa. 1979).

The information clearly and unambiguously states that Wednesday, the 6th day of August, 1997, was the date the checks were issued or passed. Accordingly, the information charges that both the bad check offenses and the theft by deception offense occurred on August 6, 1997. This fact is borne out by the transcript of Edward's guilty plea. In describing Count 5 of case number 183 of 1998 to Edward the trial judge stated:

> Count 5 at C.R. 183, Theft by Deception, **alleged that you did on August 6, 1997**, at Riverside obtain property, in this case, probably money or groceries, by deception. And you created a false impression as to your authority to write the checks and as to whether or not the checks were good and honored by the drawer to approve them. They would have to prove that to get you for Theft by Deception. Do you understand that?

Petitioner's Exhibit B pp. 13-14 (emphasis added). Clearly, the offense was alleged to have occurred on August 6, 1997 and the Commonwealth proceeded at the guilty plea under the theory that the offense occurred on August 6, 1997. That is what Edward pleaded guilty to doing.

The problem with this conviction is that on August 6, 1997, Edward was incarcerated in the Lackawana County jail and had been so since July 20, 1997. Petitioner's Exhibit C. Edward wasn't released from the Lackawana County jail until December 2, 1997, when he was turned over to the Pennsylvania Department of Corrections to serve a sentence of imprisonment on an unrelated charge out of Lackawana County. Obviously, if Edward was incarcerated in the Lackawana County jail from July 20, 1997 through December 2, 1997, he did not commit the offense of theft by unlawful taking at Henry's Riverside Market in Venango county on August 6,

5

1997.  It is more likely than not that no reasonable juror would have convicted Edward in light of his incarceration in the Lackawana County jail on August 6, 1997.  Accordingly, Edward has established that he would suffer a miscarriage of justice if his procedural default is not excused.  <u>Schlup</u>, 513 U.S.at 329, 115 S.Ct. 868.  This Court must, therefore, excuse the procedural default and address the merits of Edward's claims.

                Respectfully submitted,

                <u>/s/ Thomas W. Patton</u>
                Thomas W. Patton
                Assistant Federal Public Defender
                PA I.D. No. 88653