IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD JAMES MCNATT,  )<br>      Petitioner,  )<br>  )<br>   v.  )<br>  )<br>JUDGE OLIVER J. LOBAUGH, et al.,  )<br>      Respondents.  ) | C.A. No. 05-124 Erie<br><br>District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of *Habeas Corpus* be dismissed, that this Court's proposed findings of fact and conclusions of law be adopted, and that a certificate of appealability be denied.

**II.  REPORT**

Petitioner Edward Joseph McNatt is a state prisoner incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania. Currently pending before this Court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. [Document #3]. Respondents have submitted the relevant portions of the state court record in hard-copy format and the documents contained therein are indexed and numbered 1 through 26. Documents within the state court record will be cited as "SCR No. __."

**A.   Relevant Factual and Procedural History**

By information filed at CR No. 182-98 (SCR No. 1), the Venango County District Attorney charged Petitioner with the following counts that were alleged to have occurred on or about July 14, 1997:

    1.    Forgery, 18 P.S. § 4101(a)(2), F3, one count;
    2.    Theft by Deception, 18 P.S. § 3922(a)(1), M2, one count; and
    3.    Criminal Conspiracy, 18 P.S. § 903(a), F3, one count

By information filed at CR No. 183-98 (SCR No. 2), the Venango County District Attorney charged Petitioner with the following counts that were alleged to have occurred on or about August 6, 1997:

1. Bad Checks, 18 P.S. § 4105, M2, four counts;
2. Theft by Deception, 18 P.S. § 3922(a)(1), M1, one count;
3. Receiving Stolen Property, 18 P.S. § 3925(a), M3, one count; and
4. Forgery, 18 P.S. § 4101(a)(2)(3), F3, four counts.

On September 15, 1998, Petitioner entered a Plea Agreement with the Venango County District Attorney, pursuant to which he pled guilty to the Forgery count at CR No. 182-98, and the Theft by Deception count at CR No. 183-98, with all other counts at both CR Nos. 182-98 and 183-98 being nolle prossed. (SCR No. 4). On October 20, 1998, the Honorable Oliver J. Lobaugh sentenced Petitioner to serve an aggregate term of 32 months to 144 months of imprisonment. (SCR Nos. 6 and 8). No timely direct appeal was taken from Petitioner's conviction or sentence.

On February 17, 1999, Petitioner filed with the trial court a "motion to proceed nunc pro tunc, in filing post-sentence motions and direct appeal," arguing that his court-appointed counsel "failed to perform his duty by failing to file a notice of appeal." (SCR No. 15). Judge Lobaugh denied Petitioner's motion by Order dated March 12, 1999. (SCR No. 16).

On July 14, 2004, Petitioner filed with the trial court a motion for post conviction collateral relief ("PCRA motion") in both cases docketed at CR No. 182-98 and CR No. 183-98. (SCR No. 22). In his PCRA motion, Petitioner raised the following three arguments, which are set forth verbatim:

1. I was sentenced in an aggregated range in the sentencing guidelines, which were declared unconstitutional;

2. My plea was not entered into knowingly and willingly; and

3. Counsel was ineffective for not explaining the guidelines I (could)/was going to be sentenced under after taking the plea.

(SCR No. 22 at ¶ 5(A)).

2

On July 22, 2004, Petitioner filed with the trial court an "Amendment in Support of PCRA," in which Petitioner raised the following additional claims:

1. His Forgery conviction in Venango County violated the Double Jeopardy Clause, because he had already been convicted of the same charge for the same act in Lackawanna County;[1] and

2. Trial counsel was ineffective for failing to file a timely direct appeal from his conviction and sentence.

(SCR No. 23). On July 28, 2004, the trial court issued an Order appointing William Cisek, Esquire, to represent Petitioner in his PCRA proceeding. (SCR No. 24).

The instant habeas petition was filed with this Court on April 20, 2005, while Petitioner's PCRA motion was still pending before the trial court. The petition before this Court raises a number of claims, which may be summarized as follows:

1. Double Jeopardy;
2. Denial of Due Process;
3. Denial of Access to the Courts;
4. Malicious Prosecution;
5. Illegal Detention; and
6. Unlawfully Induced Guilty Plea.

Respondents filed an Answer to Petitioner's habeas petition asserting that Petitioner is not entitled to federal habeas review of the claims raised in his petition because he did not properly present those claims, or fully "exhaust" them, before the Pennsylvania courts. [Document # 10]. On June 9, 2006, this Court held an evidentiary hearing to determine whether Petitioner's claims were properly exhausted. Respondents subsequently filed a "Motion to Dismiss for Failure to Exhaust State Remedies" [Document # 20], asserting that Petitioner's habeas claims "w[ere] [not] afforded an opportunity to be resolved in the State's established

---

[1] Prior to being charged in Venango County, Petitioner had already been charged and convicted of Forgery in Lackawanna County, Pennsylvania. Petitioner argues that the checks he was convicted of forging in Venango County were the same checks he had stolen and forged in Lackawanna County and, therefore, he was charged twice for the same crime.

3

appellate review process" because Petitioner's state court PCRA motion was still pending resolution in the Superior Court of Pennsylvania as of the date of Respondents' motion.[2]

On January 29, 2007, this Court issued a Report and Recommendation recommending that Petitioner's habeas petition be dismissed based upon his failure to exhaust state court remedies as a result of his pending PCRA motion. [Document # 25]. This recommendation was adopted by District Judge Sean J. McLaughlin by Memorandum Order dated March 26, 2007. [Document # 28]. Petitioner immediately filed a motion for reconsideration of Judge McLaughlin's Order, arguing that, although the Order cited the exhaustion doctrine as the basis for dismissal, a procedural default analysis would have been more appropriate. [Document # 29]. In particular, Petitioner asked that this matter be referred back to this Magistrate Judge to give Petitioner the opportunity to argue that procedural default must be excused to avoid a "fundamental miscarriage of justice" under Murray v. Carrier, 477 U.S. 478, 495 (1986). Petitioner's motion for reconsideration was granted by District Judge McLaughlin by Memorandum Order dated May 17, 2007, and this matter was referred back to this Magistrate Judge "for a Report and Recommendation addressing whether the doctrines of exhaustion and/or procedural default apply to Petitioner's claims and, in the case of the latter, whether dismissing those claims as procedurally defaulted would amount to a fundamental miscarriage of justice." (Document # 33 at p. 2).

Upon return of this matter, an Order was issued on June 14, 2007, requiring the parties to file briefs addressing the issues set forth in District Judge McLaughlin's Memorandum Order, dated May 17, 2007. [Document # 34]. After obtaining a brief extension, Petitioner filed a "memorandum of law in support of his showing of a miscarriage of justice" on July 19, 2007, arguing that procedural default should be excused and that his claims should be addressed on the

---

[2] During the evidentiary hearing that was held before this Court on June 29, 2006, Petitioner's counsel, Thomas Patton, Esquire, informed the Court that Petitioner's PCRA motion was dismissed by Judge Lobaugh on January 31, 2006. According to Attorney Patton, Petitioner appealed the dismissal of his PCRA motion to the Pennsylvania Superior Court, where the appeal remained pending as of the date of the hearing. (Document # 24, Hearing Transcript, at p. 14).

merits. [Document # 36]. Despite this Court's Order dated June 14, 2007, Respondents failed to file a responsive brief opposing Petitioner's argument that procedural default should be excused. As a result, Petitioner filed a Motion for Hearing on November 30, 2007, arguing that, by failing to file an opposition brief, Respondents essentially conceded that procedural default should be excused and that evidence regarding the merits of Petitioner's claims should be heard by this Court. [Document # 37]. This motion was granted by this Court on December 5, 2007, and an evidentiary hearing was held before this Court on January 24, 2008, to address the merits of Petitioner's claims.[3]

During the evidentiary hearing held before this Court on January 24, 2008, the evidence and argument presented by Petitioner's counsel was confined to the issue of whether Petitioner's trial counsel was ineffective. Plaintiff alleges that his counsel allowed him to plead guilty to the charge of Theft by Deception at CR No. 183-98, even though Petitioner was incarcerated at the Lackawanna County Jail on the date he was alleged to have committed Theft by Deception in Venango County, Pennsylvania. Thus, Petitioner is alleging that his trial counsel improperly counseled him to plead guilty to a crime he could not have committed on the date charged. Resolution of this issue will effectively determine the merits of the petition since the issue is central to all of the claims raised by Petitioner in his habeas petition.

In this context, the following are the proposed findings of fact and conclusions of law derived from the relevant evidence and testimony that was presented during the evidentiary hearing of January 24, 2008.[4]

### B. Proposed Findings of Fact

---

[3] By granting this motion, this Court implicitly determined that Respondents have waived any further argument that Petitioner has failed to exhaust and/or procedurally defaulted on his state court remedies, and Petitioner's procedural default has been excused. (See Document # 42, Evidentiary Hearing Transcript, at p. 52).

[4] The evidentiary hearing transcript has been filed in this case at Document # 42. All references to the evidentiary hearing transcript will be identified by the abbreviation "EHT," followed by the relevant page number(s).

1. In July 1997, Petitioner stole a checkbook from Frances and William Reese ("the Reeses"), and forged two checks from the checkbook in Lackawanna County, Pennsylvania. (EHT at p. 5).

2. Petitioner then traveled to Venango County, Pennsylvania, where he passed checks from the stolen checkbook at Henry's Riverside Market in exchange for merchandise. (EHT at pp. 5, 27).

3. Immediately after passing the last check in Venango County, Petitioner traveled to Essex Junction, Vermont, where he left his car, which contained the stolen checkbook. (EHT at pp. 5-6, 9).

4. On or about July 19, 1997, Petitioner borrowed a truck and returned to Lackawanna County, Pennsylvania, to pick up some furniture. (EHT at p. 9).

5. Upon entering Lackawanna County, Petitioner was arrested on charges related to his theft and illegal use of the Reeses' checkbook, as well as an unrelated retail charge of receiving stolen property. (EHT at pp. 6-7, 9).

6. Immediately after his arrest, Petitioner was detained at the Lackawanna County jail. (EHT at p. 6).

7. Petitioner has not been free from incarceration since his arrest on July 19, 1997. (EHT at p. 6).

8. Petitioner was convicted of the unrelated retail charge and sentenced to serve one and a half to three years of imprisonment, after which he was transferred to the State Correctional Institution at Graterford, Pennsylvania. (EHT at p. 7).

9. Petitioner was subsequently transferred to the State Correctional Institution at Camp Hill, Pennsylvania ("SCI Camp Hill"). (EHT at p. 7).

10. While Petitioner was incarcerated at SCI Camp Hill, two detectives from the Pennsylvania State Police took custody of Petitioner on an arrest warrant for the forged checks he passed in Venango County, and they transported Petitioner to Oil City, Pennsylvania for questioning. (EHT at p. 8).

11. When Petitioner arrived in Oil City, he was questioned by the state police, and an "Officer Schattauer" from the Oil City Police Department. (EHT at p. 8).

12. During questioning, Petitioner informed Officer Schattauer "that there were no other checks out there" because (i) the Vermont State Police had possession of the checkbook and (ii) Petitioner was incarcerated shortly after the checks were passed in Venango County. (EHT at pp. 9-10).

13. After Petitioner was interviewed by the state police and Officer Schattauer, the Venango County District Attorney filed criminal charges against Petitioner under two separate informations docketed at CR Nos. 182-98 and 183-98. (SCR Nos. 1 and 2).

14. The information at CR No. 182-98 charged that, on or about July 14, 1997, Petitioner committed one count each of Forgery (a third degree felony carrying a maximum prison term of 7 years), Theft by Deception (a second degree misdemeanor carrying a maximum prison term of 2 years), and Criminal Conspiracy (a third degree felony carrying a maximum prison term of 7 years), in connection with a forged check he wrote from the Reeses' stolen checkbook to an establishment known as Peddler's Village in Venango County, Pennsylvania. (SCR No. 1).

15. The information at CR No. 183-98 charged that, on or about August 6, 1997, Petitioner committed four counts of Bad Checks (each count is a second degree misdemeanor carrying a maximum prison term of 2 years), one count of Theft by Deception (a first degree misdemeanor carrying a maximum prison term of 5 years), one count of Receiving Stolen Property (a third degree misdemeanor carrying a maximum prison term of 1 year), and four counts of Forgery (each count is a third degree felony carrying a maximum prison term of 7 years), in connection with four forged checks he wrote from the Reeses' stolen checkbook to an establishment known as Henry's Riverside Market in Venango County, Pennsylvania. (SCR No. 2).

16. After Petitioner's preliminary hearing was waived, Petitioner was returned to SCI Camp Hill and subsequently transferred to the State Correctional Institution at Houtzdale, Pennsylvania. (EHT at pp. 11-12).

17. Petitioner was returned to Venango County for his arraignment on or about September 15, 1998, at which time he had his first meeting with his new court-appointed attorney, Blair Hindman, Esquire, at the Venango County Jail. (EHT at p. 12; SCR No. 3).

18. Attorney Hindman presented Petitioner with a plea agreement which required him to plead guilty to one count of forgery and one count of theft by deception, in exchange for having all other counts nolle prossed. (EHT at p. 12; SCR No. 4). Attorney Hindman indicated that Petitioner would be facing 30 years in prison if he didn't accept the agreement.

19. Petitioner's meeting with Attorney Hindman lasted approximately fifteen minutes, during which Petitioner was not shown a charging document nor told the dates on which the offenses were alleged to have occurred. Nevertheless, Petitioner agreed to accept the plea agreement. (EHT at p. 13).

20. Shortly after their meeting, Petitioner and Attorney Hindman proceeded to the Venango County Court House to attend the arraignment. Before his case was called, Petitioner informed Attorney Hindman that there were no more checks "out there" because he was arrested and put in jail shortly after he wrote the last check in July 1997, and that the checks had been confiscated by the Vermont State Police. (EHT at pp. 14-15). Petitioner then reviewed and signed the plea agreement. (EHT at p. 17).

21. During the plea colloquy, the following exchanges occurred between the presiding judge, Honorable H. William White, Attorney Hindman and Petitioner:

   The Court:   Count 5 at C.R. 183, Theft by Deception, alleged that

8

|  |  |
|---|---|
|  | you did on August 6, 1997, at Riverside obtain property, in this case, probably money or groceries, by deception. And you created a false impression as to your authority to write the checks and as to whether or not the checks were good and honored by the drawer to approve them. They would have to prove that to get you for Theft by Deception. Do you understand that? |
| Mr. McNatt: | Yes, Your Honor. |
| The Court: | And are you confessing to these offenses as substantially as they are charged? |
| Mr. McNatt: | Yes. |
|  | *               *               * |
| Mr. Hindman: | Taking you back to the time period between, as the Court has mentioned, July 14, 1997 and August 6, 1997, did you, in fact, write checks to yourself under your true name and sign the back of those checks under a false name? |
| Mr. McNatt: | I signed the front of the check with a false name. |
| Mr. Hindman: | So you did use a name other than your own? |
| Mr. McNatt: | Yes. |
| Mr. Hindman: | Passing any of these checks to a certain establishment? |
| Mr. McNatt: | Yes. |
| Mr. Hindman: | Riverside? |
| Mr. McNatt: | And Bedler's [sic] Village. |
| Mr. Hindman: | Did you receive property? |
| Mr. McNatt: | Yes. |
| Mr. Hindman: | What type of property? |
| Mr. McNatt: | Cash and merchandise. |

(Document # 36, Exhibit B at pp. 14-15).

22. Despite the foregoing exchanges, Petitioner testified that, as he was standing before the presiding judge and entering his plea of guilty in accordance with the plea agreement, he did not realize that the theft by deception charge to which he

9

|     | pleaded guilty was alleged to have occurred on or about August 6, 1997. (EHT at p. 18). |
| --- | --- |
| 23. | Petitioner testified that he was never informed by Attorney Hindman that the charging document claimed that the theft by deception offense occurred on or about August 6, 1997, nor was he ever shown the relevant charging document. (EHT at pp. 19-20). |
| 24. | Petitioner testified that he would not have entered a guilty plea to the theft by deception charge, and he "would have taken it to trial," if he had been informed by his attorney that the offense was alleged to have occurred on August 6, 1997, "because there's no way [he] could have committed any crime after July 19, 1997," due to his incarceration. (EHT at pp. 18-19, 22). |

### C.     Proposed Conclusions of Law

The two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). Thus, in order to prevail on his claim, Petitioner must show that (i) his attorney's conduct fell below an objective standard of reasonable competence under prevailing norms, and (ii) there is a reasonable probability that, but for the error, the outcome in his case would have been different. Strickland, 466 U.S. at 687-88, 694.

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense

was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable.  Strickland, 466 U.S. at 689.  To prove prejudice in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  A "reasonable probability" is one that is sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 689.

The Plaintiff does not establish that Attorney Hindman's conduct did not meet the prevailing norms of an attorney in a criminal case in order to satisfy the first prong of the Strickland analysis.  A defendant needs to present evidence "sufficient to undermine our confidence that [the attorney] would have advised his client to plead guilty rather than proceed to trial and that [the defendant] would have accepted that advice."  United States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997).  Attorney Hindman's advice to Petitioner to accept the plea agreement and plead guilty was "within the range of competence demanded of attorneys in criminal cases."  Strickland 466 U.S. at 687.  A reasonably competent attorney may choose not to challenge an incorrect date in a charging document, one that is easily corrected or modified by the State, in order to maintain a plea agreement that significantly reduces the number of offenses the client is charged with and, thus, the length of the client's sentence.

Here,  the Petitioner was faced with a total of 13 criminal charges, including:  (i) five counts of forgery, carrying a cumulative maximum prison sentence of 35 years; (ii) two counts of theft by deception, carrying a cumulative maximum prison sentence of 7 years; (iii) four counts of bad checks, carrying a cumulative maximum prison sentence of 8 years; (iv) one count of criminal conspiracy, carrying a maximum prison sentence of 7 years; and (v) one count of receiving stolen property, carrying a maximum prison sentence of 1 year.  Under the plea agreement negotiated by Petitioner's trial counsel, Petitioner pleaded guilty to only two of the criminal charges in exchange for having the remaining eleven criminal charges nolle prossed.  The maximum prison sentence received by Petitioner under this plea arrangement was  12 years,

significantly less than the cumulative maximum prison sentence of 58 years he could have received if found guilty of all charges against him, which was likely, given the overwhelming evidence of record, including his own admissions. Accordingly, this Court would be hard-pressed to find trial counsel ineffective and not acting within prevailing norms of effective criminal counsel for recommending the challenged plea agreement in such circumstances.

Moreover, the Petitioner has not shown that, even if his trial counsel's recommendation did not comply with the first prong, there was a reasonable probability that he would not have pleaded guilty and proceeded to trial. The only evidence Petitioner has submitted is his own testimony that he would not have pleaded guilty to the theft by deception charge had his counsel made him aware that the charge was alleged to have occurred on August 6, 1997, while Petitioner was incarcerated in the Lackawanna County Jail. This testimony, standing alone, is insufficient to satisfy Strickland's prejudice standard. "[A] defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." Parry v. Rosenmeyer, 64 F.3d 110, 118 (3d Cir. 1995).

In fact, in this case, Petitioner has admitted at various stages of his trial and appellate court proceedings that he committed the acts underlying the theft by deception charge he is now challenging. The Third Circuit has held that "where the record is 'replete with evidence of petitioner's guilt,' he is unable to show that there is a reasonable probability that but for his counsel's errors the result of the proceeding would have been different." United States v. Wilder, 204 Fed. Appx. 146, 149 (3d Cir. 2006), quoting United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989). In particular, at his plea colloquy before the trial judge, Petitioner openly admitted that he passed forged checks to Henry's Riverside Market in Venango County, Pennsylvania, in exchange for cash and merchandise. Later, in an amendment to his PCRA motion filed with the trial court on July 22, 2004, Petitioner "submit[ted] that he did commit theft by deception by producing [bad] checks to businesses throughout Venango County for merchandise." (SCR No. 23 at p. 65). Then, during the evidentiary hearing held before this Court on January 24, 2008, Petitioner reiterated that he stole the Reeses' checkbook in July

12

1997, forged checks from the checkbook, and used some of those forged checks to purchase "merchandise and whatever" from Riverside Market in Venango County. (EHT at pp. 5, 27). Petitioner also admitted that the passing of the forged checks for merchandise in Venango County constituted theft by deception, and that the checks at issue were specifically identified in the information at CR 183-98. (EHT at pp. 27-28).

Based on the foregoing record, it is clear that Petitioner has not, at any point, disputed that he was guilty of committing theft by deception when he passed forged checks to Henry's Riverside Market in Venango County, Pennsylvania, in return for cash and/or merchandise. Petitioner only disputes that he could not have committed theft by deception on the date specified in the information at CR No. 183-98 -- August 6, 1997 -- as he was incarcerated and unable to pass the checks to **obtain** the cash or merchandise on such date. However, the plain language of the statute defining the crime of Theft by Deception, as recited verbatim in the information at CR No. 183-98, makes clear that "[a] person is guilty of theft if he intentionally obtains **or withholds** property of another by deception." 18 Pa.C.S.A. § 3922(a). Even accepting Petitioner's argument that it was impossible for him to have passed a bad check to **obtain** merchandise on August 6, 1997, he has not presented any evidence to overcome the fact that he continued to **withhold** property of another by deception on such date. This Court must, therefore, conclude that, even if Petitioner had been advised by his trial counsel that he was charged with committing theft by deception on August 6, 1997, Petitioner would still have been advised to plead guilty to such charge or be found guilty after trial. Petitioner cannot show that there is a reasonable probability that, but for the alleged error committed by his trial counsel, the outcome of the proceeding would have been different.

### D. Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id.(28 U.S.C. § 2253(c)). Petitioner has not made a showing that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of *Habeas Corpus* be dismissed, that this Court's proposed findings of fact and conclusions of law be adopted, and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: July 17, 2008

cc: The Honorable Sean J. McLaughlin
United States District Judge