IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD JOSEPH McNATT, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) C. A. No. 05-124 Erie |
| | ) |
| JUDGE OLIVER LOBAUGH, et al., | ) |
| | ) |
| Respondents. | ) |

**PETITIONER, EDWARD JOSEPH McNATT'S, OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

AND NOW, comes the petitioner, Edward Joseph McNatt, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and files his Objections to the Magistrate Judge's Report and Recommendation:

Proposed Findings of Fact

Edward has no objection to Judge Baxter's proposed findings of fact.

Proposed Conclusions of Law

Edward objects to Judge Baxter's proposed conclusion of law that Edward's attorney's conduct did not fall below an objective standard of reasonableness because "[a] reasonable competent attorney may choose not to challenge an incorrect date in a charging document, one that is easily corrected or modified by the State, in order to maintain a plea agreement that significantly reduces the number of offenses the client is charged with and, thus, the length of the client's sentence." This proposed conclusion misconstrues the function of defense counsel in an adversary system, and is based on an over-inflated belief as to the value of the plea agreement. Edward also objects to Judge Baxter's proposed conclusion of law that he did not establish that

1

he would not have pled guilty absent his attorney's unreasonable conduct. This proposed conclusion undervalues the complete defense Edward would have had to the charges alleged in the information, and misconstrues exactly what those charges were.

     A.     Edward's attorney's conduct fell below an objective standard of reasonableness.

This Court is familiar with <u>Strickland v. Washington's</u> two-part test for determining claims of ineffective assistance of counsel. To succeed on a <u>Strickland</u> claim a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. To establish prejudice, a petitioner must only show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would be different." <u>Id</u>. at 692. A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id</u>. at 689.

The conviction Edward is challenging arose from an information filed against him in the Venango County Court of Common Pleas in case number 183 of 1998. The information charges in relevant part:

> THE DISTRICT ATTORNEY OF VENANGO COUNTY, by this information charges that on or about Wednesday, the 6th day of August, 1997, in said County of Venango, Pennsylvania, the defendant:
>
> COUNT 1-4 - BAD CHECKS - MULTIPLE CHECKS AT ONE BUSINESS - (M2)
>
> did unlawfully issue or pass checks, at Henry's Riverside Market, located in Venango County, PA, as enumerated below by check number, date of check and its amount, all drawn on Account     1845 of the PNC Bank of Oil City, knowing that these checks would not be honored by the drawer:

| Check Number | Date of Check | Amount of Check |
|---|---|---|
| 6555 | 7/12/97 | $200.00 |
| 6557 | 7/14/07 | $173.15 |
| 6558 | 7/15/07 | $200.00 |
| 6560 | 7/18/07 | $200.00 |

> Said conduct constitutes (4) counts of Bad Checks [18 P.S. 4105 (a)] and constitutes the defendant's third or subsequent bad check offense within five years.
> [18 P.S. 4105]
>
> COUNT 5 - THEFT BY DECEPTION - (M2)
>
> did unlawfully and intentionally obtain or withold [sic] the property of another by deception in that he created or reinforced a false impression as to law, value, intention or other state of mind; to wit: did the acts described above.
> [18 P.S. 3922 (a)(1)].

The Bad Checks statute, 18 Pa.C.S.A. § 4105(a)(1) states that "[a] person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee." The crime is completed when a check is issued or passed knowing that the check will not be honored. Commonwealth v. Mutnik, 406 A.2d 516, 518 (Pa. 1979).

The information clearly and unambiguously states that Wednesday, the 6th day of August, 1997, was the date the checks were issued or passed. Accordingly, the information charges that both the bad check offenses and the theft by deception offense occurred on August 6, 1997. This fact is borne out by the transcript of Edward's guilty plea. In describing Count 5 of case number 183 of 1998 to Edward the trial judge stated:

> Count 5 at C.R. 183, Theft by Deception, **alleged that you did on August 6, 1997**, at Riverside obtain property, in this case, probably money or groceries, by deception. And you created a false impression as to your authority to write the checks and as to whether or not the checks were good and honored by the drawer

>to approve them.  They would have to prove that to get you for Theft by Deception.  Do you understand that?

Petitioner's Exhibit B pp. 13-14 (emphasis added).  Clearly, the offense was alleged to have occurred on August 6, 1997 and the Commonwealth proceeded at the guilty plea under the theory that the offense occurred on August 6, 1997.  That is what Edward pleaded guilty to doing.

The problem with this conviction is that on August 6, 1997, Edward was incarcerated in the Lackawana County jail and had been so since July 20, 1997.  R and R p. 6.  Edward told his attorney that he had been incarcerated since July 1997 and, therefore, could not have written any checks in August.  EHT 14-17; R and R p. 7.  Despite Edward telling his attorney that Edward had been incarcerated since July 1997, his attorney advised Edward to plead guilty to the theft by deception charge that alleged that Edward committed the offense on August 6, 1997.  Judge Baxter finds this conduct reasonable.  It was not.

Judge Baxter found that "[a] reasonably competent attorney may choose not to challenge an incorrect date in a charging document, one that is easily corrected or modified by the State, in order to maintain a plea agreement that significantly reduces the number of offenses the client is charged with and, thus, the length of the client's sentence."  R and R p. 11.  This finding seriously misconstrues the fundamental role defense counsel plays in our adversarial system.  "It is the defense lawyer's job to be an advocate, not to be the prosecutor's lackey."  United States v. Duarte, 81 F.3d 75, 77 (7th Cir. 1996).  To this end, defense counsel cannot fail to capitalize on a prosecutor's mistake based on the **assumption** that the prosecutor will fix the mistake.  It is the defense attorney's job to capitalize on the prosecutor's mistakes.  If done properly, no one recognizes the mistake ever occurred until it is too late to correct the mistake.  And, the truth of

the matter is that prosecutors don't always fix their mistakes, thereby allowing a defendant to benefit. A baseball analogy helps make the point.

A good baseball player, that is an objectively reasonable player, runs hard to first base even if he hits a ground ball right at an infielder. The batter runs out the hit even though the odds are that the infielder will cleanly field the ball and throw the runner out at first base. The reason a good baseball player runs hard to first is that he knows that there is a chance that 1) the infielder may not cleanly field the ball, or 2) even if the infielder cleanly fields the ball he may make a bad throw to first base, or 3) even if the infielder fields the ball cleanly and makes a good throw to first base, the first baseman may drop the ball, or 4) even if the infielder fields the ball cleanly, makes a good throw to first base, and the first baseman catches the ball, the first baseman may pull his foot off the base. While 99 out of 100 times the infielder will field the ball cleanly and throw the runner out, the good player, the objectively reasonable player, still runs hard to first base 100 times so that he may capitalize on the one time a mistake is made. After all, the runner can never know which of the 100 times the fielder or first baseman will make an error. So it is with good attorneys, that is, objectively reasonable attorneys. A good defense attorney makes the prosecution do it right **every time** because sometimes, and its never known ahead of time when, the prosecution will not do it right and the client will benefit.

It is sheer speculation in this case to believe that had defense counsel acted on the mistaken date in the information that the Commonwealth would have properly addressed the mistake and rectify it. As the Seventh Circuit has explained in the slightly different, yet relevant, situation of deciding whether to file a motion to suppress, "[c]riminal defense lawyers should not preempt judges by making their own negative rulings on close motions concerning crucial

testimony." Rodriguez v. Young, 906 F.2d 1153, 1161 (7th Cir. 1990). Likewise here, Edward's attorney should not have preempted the prosecutor by failing to raise a meritorious defense.

Judge Baxter's conclusion that defense counsel's actions did not fall below an objective standard of reasonableness is also wrong because it over-values the benefit Edward received from the plea agreement. Judge Baxter found that counsel's actions were reasonable, in part, because Edward had been facing 13 charges which subjected him to the possibility of 58 years of imprisonment and the plea agreement allowed him to plead guilty to two offenses with a maximum total punishment of 12 years. R and R pp. 11-12. The first problem with this analysis is that it includes the counts from case number 182 of 98. But there is no testimony that Edwards plea agreement with regard to the charges contained in 182 of 98, which allowed him to plead guilty to one count of forgery, was contingent upon Edward's acceptance of the Commonwealth's offer to plead guilty to the theft by deception charge contained in 183 of 98 in return for the dismissal of the rest of the charges in that information. Thus, the potential statutory maximums Edward faced in case number 182 of 98 are not relevant. The second problem with Judge Baxter's analysis is that, focusing just on the charges in 183 of 98, aggregating the statutory maximums of the offenses charged overstates Edward's true sentencing exposure because it does not take into account that most of the offenses would have merged for sentencing purposes.

In information number 183 of 98, Edward was charged with four counts of bad checks, one count of theft by deception, one count of receiving stolen property, and three counts of forgery. Each of the bad check counts was a misdemeanor of the first degree carrying a statutory

maximum of 5 years.[1]  The theft by deception charge was a misdemeanor of the first degree, carrying a statutory maximum of five years.  The receiving stolen property charge was a misdemeanor of the third degree, carrying a statutory maximum of one year.  The four forgery counts were each felonies of the third degree, each carrying a statutory maximum of seven years.  Simply adding all of these statutory maximums would result in a maximum possible sentence of seventy-four years.  But due to Pennsylvania's merger doctrine, Edward was not really facing the potential of seventy-four years of imprisonment.

"Where an actor commits a single criminal act, the senteces for multiple convictions based upon that act merge if one offense is a lesser included offense of the other.  A lesser included offense is one whose elements are a necessary subcomponent but not a sufficient component of elements of the other crime." Commonwealth v. Murgallis, 753 A.2d 870, 872 (Pa. Super. 2000) (internal citations omitted).  In this case, both the theft by deception charge and the four forgery charges were all based upon the act of passing the bad checks.  Accordingly, the bad checks, theft by deception, and forgery counts would have merged at sentencing, with the seven year maximum of the forgery charges being the maximum sentence for each check.  Taking merger into account, therefore, shows that Edward was truly facing twenty-nine years of imprisonment rather than 74, or the 58 referred to by Judge Baxter.

  B.  Edward was prejudiced by his counsel's unreasonable performance.

In the context of a guilty plea, to show prejudice a defendant must show that "there is a

---

[1] The R and R lists the statutory maximum for these offense as two years, R and R p. 11, but because this was Edward's third bad check offense within five years and involved checks worth less than $75,000, the offenses were M-1's which carried a statutory maximum of 5 years. 18 Pa.C.S.A. § 4105(c)(2).  This error also occurs on the information itself.

reasonable probability that, but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). The defendant does not have to show that there is a probability that he would have been acquitted. Id.

Judge Baxter finds that Edward has not met his burden of establishing he would not have pled guilty absent his counsel's unreasonable performance because he has merely put forth a "bald assertion" that he would not have pled guilty and the evidence of his guilt was overwhelming. R and R p. 12. In support of this finding Judge Baxter relies upon Parry v. Rosenmeyer, 64 F.3d 110, 118 (3rd Cir. 1995), and United States v. Nino, 878 F.2d 101, 105 (1989). Judge Baxter is wrong on both issues.

As far as Edward's "bald assertion" that he would not have pled guilty had he known about the Commonwealth's mistake as to the date of the offenses, what other way does a defendant have to prove that he would not have pled guilty had he known of his counsel's unreasonable conduct other than to testify to that effect. No other such evidence exists. The Third Circuit's statement in Parry that a bald assertion is not sufficient to establish prejudice was based upon the context in which the defendant challenged his counsel's advice to plead guilty. In Parry, the defendant was complaining that his attorney did not inform him that if he received a sentence of probation that the probation could be revoked and the defendant sentenced to a term of imprisonment if the defendant violated the terms of his probation. Id. at 118. The defendant claimed that if he had known about the possibility of being sentenced to a term of imprisonment if he violated the conditions of probation he would not have pled guilty. The Third Circuit rejected this argument because it found that the defendant waited to challenge his guilty plea and sentence of probation until after he violated the probation by committing a new offense and was

8

facing a revocation of probation and a prison sentence.  Id.  The Third Circuit noted that had the defendant challenged his plea prior to being arrested and having his probation revoked such a challenge "might possibly have given us pause."  Id. at 119.  In this case, Edward began challenging his plea and sentence immediately.  See Commonwealth's Answer to Petition for Writ of Habeas Corpus.

   As to the overwhelming evidence of guilt, there is not overwhelming evidence of Edward's guilt as to **the charged offense.**  To the contrary, there is overwhelming evidence that Edward was not guilty of the charged offenses.  It was impossible for Edward to commit the offenses of writing a bad check, theft by deception, receiving stolen property, or forgery on August 6, 1997 since he was in the Lackawana County Jail.  Accordingly, Nino offers no support for Judge Baxter's conclusion that Edward did not establish prejudice from his counsel's unreasonable performance.

   Finally, Judge Baxter's claim that Edward was guilty of theft by deception because he was still withholding property of Henry's Riverside Market on August 6, 1997, is dead wrong.  First, although the statutory language of the theft by deception statute states that the offense can be committed by either obtaining or withholding property of another by deception, Edward was clearly only charged with obtaining property by deception.  The trial judge realized this when he described the charge to Edward at the guilty plea.  At the change of plea hearing the trial judge explain that charge to Edward as follows:

> Count 5 at C.R. 183, Theft by Deception, alleged that you did on August 6, 1997, at Riverside **obtain property**, in this case, probably money or groceries, by deception.  And you created a false impression as to your authority to write the checks and as to whether or not the checks were good and honored by the drawer to approve them.  They would have to prove that to get you for Theft by

9

>Deception. Do you understand that?

See, Petitioner's Memorandum of Law in Support of His Showing of Miscarriage of Justice, document 36, exhibit 3, p. 13-14. No mention was made of withholding property by deception. The reason no mention was made of withholding property by deception is because it was not charged nor could it have been under the facts of the case. The Superior Court of Pennsylvania has explained the type of deception necessary to support a charge of withholding property by deception under 18 Pa.C.S.A. § 3922:

> Although the Crimes Code contains no definition of "withholding" property, it is clear that § 3922 requires a causal connection between the deception and the withholding similar to that between the deception and the obtaining; that is, the deception must cause the victim to acquiesce in the deceiver's continued possession of the property.

Commonwealth v. Patterson, 390 A.2d 784, 789 (Pa. Super. 1978). The theft by deception charge at issue here stated Edward: "did unlawfully and intentionally obtain or withold [sic] the property of another by deception in that he created or reinforced a false impression as to law, value, intention or other state of mind; **to wit: did the acts described above**." The acts described above were the four bad check charges. Obviously, writing the bad checks was the deception that allowed Edward to **obtain** the money and merchandise. However, once the checks were not honored, they could not form the basis of a deception that caused the victim to acquiesce in Edward's continued possession of the money and merchandise.

Conclusion

Edward's counsel's representation fell below an objective standard of reasonableness. Edward was prejudiced by his counsel's unreasonable conduct and, thus, received ineffective

10

Case 1:05-cv-00124-SJM-SPB    Document 46    Filed 08/12/2008    Page 11 of 11

assistance of counsel.  The Court should reject Judge Baxter's R and R and issue a writ of habeas corpus vacating Edward's conviction of theft by deception.

                                        Respectfully submitted,

                                        <u>/s/ Thomas W. Patton</u>
                                        Thomas W. Patton
                                        Assistant Federal Public Defender
                                        PA I.D. No. 88653

11